ELECTRONIC CITATION:  2010 FED App. 0006P (6th Cir.)
File Name:  10b0006p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:   LOUIS D. AMIR,                    )
                                           )
                                           )
                    Debtor.                )        Nos. 09-8002, 09-8012, 09-8017
_____  )        and 09-8051
                                           )
                                           )
DAVID O. SIMON, CHAPTER 7 TRUSTEE,         )
                                           )
                                           )
                Plaintiff-Appellee,        )
                                           )
        v.                                 )
                                           )
LOUIS D. AMIR,                             )
                                           )
                                           )
                Defendant-Appellant.       )
_____  )

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio
No. 08-13700; Adv. No. 08-1258.

Decided and Filed:  August 5, 2010

Before: BOSWELL, McIVOR, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Robert D. Barr, Lisa A. Vardzel, DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellee.  Louis D. Amir, Gates Mills, Ohio, pro se.

---

**OPINION**

---

G. HARVEY BOSWELL, Bankruptcy Appellate Panel Judge. The debtor in this case, Louis D. Amir ("Amir"), *pro se*, filed four separate notices of appeal for eight orders from the Bankruptcy Court for the Northern District of Ohio. First, Amir appeals the bankruptcy court's January 12, 2009, Order avoiding a pre-petition transfer of real property in Gates Mills, Ohio, ("Gates Mills property") pursuant to 11 U.S.C. §§ 544 and 547. Second, Amir appeals the bankruptcy court's February 25, 2009, Order denying his emergency motion to strike the petition and retroactively annul the automatic stay. Third, Amir appeals a February 25, 2009, Order denying his emergency motion to void the sale of his 2007 Bentley. Fourth, Amir appeals the bankruptcy court's March 17, 2009, Order denying his emergency motion to dismiss pursuant to 11 U.S.C. § 521(i). Lastly, Amir appeals four bankruptcy court orders issued on August 3, 2009. These orders (1) clarified that there is no stay in effect pending appeal, (2) granted the motion for authority to change the locks on the Gates Mills property filed by the chapter 7 Trustee, David O. Simon ("Trustee"), (3) granted the Trustee's motion to sell the Gates Mills property, and (4) granted the Trustee's application to employ a realtor to sell the Gates Mills property. The appeals have been consolidated.

For the following reasons, the Panel AFFIRMS the bankruptcy court's February 25, 2009, Order denying Amir's motion to strike and retroactively annul the automatic stay and the bankruptcy court's March 17, 2009, Order denying Amir's emergency motion to dismiss. The Panel DISMISSES the appeals of the following orders for lack of jurisdiction: (1) January 12, 2009, Order avoiding the pre-petition transfer of the Gates Mills property; (2) February 25, 2009, Order denying Amir's motion to void the sale of his 2007 Bentley; and (3) August 3, 2009, Orders: a) clarifying that there is no stay in effect pending appeal, b) granting the Trustee's motion to change the locks, c) granting the Trustee's motion to sell the Gates Mills property, and d) granting the Trustee's application to employ a realtor.

2

# I. JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Northern District of Ohio has authorized appeals to the Bankruptcy Appellate Panel ("Panel"), and no party has timely elected to have these appeals heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). The Panel has jurisdiction to hear appeals from "*final* judgments, orders, and decrees . . . ." 28 U.S.C. § 158(a)(1) (emphasis added). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

## A.     February 25, 2009, and March 17, 2009, Orders denying Amir's motions to dismiss

An order which denies a motion to dismiss a bankruptcy petition is not a final order for purposes of appeal. *Jefferson County Bd. of County Comm'rs v. Voinovich* (*In re The V Cos.*), 292 B.R. 290, 292 (B.A.P. 6th Cir. 2003). An interlocutory, or non-final, order may only be appealed with leave of the court. 28 U.S.C. § 158(a)(3). Leave of court is generally sought by filing a motion for leave to appeal; however, in appropriate circumstances, the Panel may consider a notice of appeal as a motion for leave to appeal and decide the appeal. *See Wicheff v. Baumgart* (*In re Wicheff*), 215 B.R. 839, 843 (B.A.P. 6th Cir. 1998); Fed. R. Bankr. P. 8003(c); 28 U.S.C. §§ 158(a)(3) and (b). If the Panel decides that exercising jurisdiction over an interlocutory order is not appropriate, it lacks jurisdiction over the appeal. 28 U.S.C. § 158(a)(3).

The decision to grant leave to appeal is within the Panel's discretion and should be made by examining the standards found in 28 U.S.C. § 1292(b). *U.S. Trustee v. Eggleston Works Loudspeaker Co.* (*In re Eggleston Works Loudspeaker Co.*), 253 B.R. 519, 521 (B.A.P. 6th Cir. 2000). Section 1292(b) defines the Courts of Appeals' jurisdiction over interlocutory orders and, while the Panel is not constrained by the standards set forth in 28 U.S.C. § 1292(b), they are instructive. *Wicheff*, 215 B.R. at 844. The Sixth Circuit has adopted a four-part test for use in determining whether to grant leave to appeal an interlocutory order pursuant to 28 U.S.C. § 1292(b):

(1) The question involved must be one of "law"; (2) it must be "controlling"; (3) there must be substantial ground for "difference of opinion" about it; and (4) an immediate appeal must "materially advance the ultimate termination of the litigation."

*Cardwell v. Chesapeake & Ohio Ry. Co.*, 504 F.2d 444, 445 (6th Cir. 1974).

The Panel finds that the appeals of the February 25, 2009, and March 17, 2009, Orders denying Amir's motions to dismiss involve controlling questions of law on which there is substantial ground for difference of opinion. The February 25, 2009, Order denying Amir's emergency motion to strike the petition and retroactively annul the automatic stay was based on the bankruptcy court's interpretation of 11 U.S.C. § 109(h) and Federal Rule of Bankruptcy Procedure 9011. The March 17, 2009, Order denying Amir's emergency motion to dismiss was based on the bankruptcy court's interpretation of 11 U.S.C. § 521(i). Both 11 U.S.C. § 109(h) and § 521(i) were added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Since their enactment, courts have strongly disagreed over the meaning of both sections. *See, e.g., Wirum v. Warren* (*In re Warren*), 568 F.3d 1113 (9th Cir. 2009); *In re Spencer*, 388 B.R. 418 (Bankr. D. Colo. 2008); *In re Giles*, 361 B.R. 212 (Bankr. D. Utah 2007); *In re Hess*, 347 B.R. 489 (Bankr. D. Vt. 2006). The result is a split of authority among the courts.

The Panel also finds that allowing an immediate appeal of the two bankruptcy court orders denying Amir's motions to dismiss would "materially advance the ultimate termination of the litigation." *Wicheff*, 215 B.R. at 844. If the Panel affirms the bankruptcy court's decisions, Amir's case will continue and the Trustee will be able to complete the liquidation of estate assets. If the Panel instead decides that the bankruptcy court should be reversed, Amir's bankruptcy case will be dismissed and the Trustee will not be able to distribute any assets to creditors. Amir's appeals of the February 25, 2009, and March 17, 1009, Orders meet the criteria for pursuing an appeal of an interlocutory order. Therefore, the Panel concludes it is appropriate to grant leave to appeal the February 25, 2009, and March 17, 2009, Orders denying Amir's motions to dismiss.

On appeal, rulings on motions to dismiss a bankruptcy case are reviewed for an abuse of discretion. *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008). "An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.'" *Mayor of Baltimore v. West Virginia (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) (citing *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999)). In reviewing a lower court's decision under the "abuse of discretion" standard,

> "[t]he question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. (In re M.J. Waterman & Assocs.)*, 227 F.3d 604, 608 (6th Cir. 2000) (citations omitted).

*Geberegeorgis v. Gammarino (In re Geberegeorgis)*, 310 B.R. 61, 64 (B.A.P. 6th Cir. 2004).

**B.     January 12, 2009, Order avoiding the pre-petition transfer of the Gates Mills property and August 3, 2009, Order granting the Trustee's motion to sell the property**

Although neither party to this appeal raised the issue of Amir's standing to appeal the June 12, 2009, Order avoiding the pre-petition transfer of real property, or the August 3, 2009, Orders relating to the sale of the real property, it is appropriate for the Panel to raise the issue *sua sponte*. *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 665 (6th Cir. 2001). The lack of standing is a jurisdictional bar to appellate review. *Harker v. Troutman (In re Troutman Enters.)*, 286 F.3d 359, 364 (6th Cir. 2002). An appellate court must therefore raise the issue of standing *sua sponte* because it is "under an independent obligation to police its own jurisdiction." *Basic Energy*, 273 F.3d at 665.

"Appellate standing in bankruptcy cases is more limited than Article III standing or the prudential requirements associated therewith." *Troutman*, 286 F.3d at 364 (citation omitted). In

5

order to have standing to appeal a bankruptcy court order, an appellant must be a "person aggrieved" by the bankruptcy court's order. *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (citations omitted). This doctrine limits standing to those persons who "have been directly and adversely affected pecuniarily by the order. . . . Only when the order directly diminishes a person's property, increases his burdens, or impairs his rights will [an appellant] have standing to appeal." *Id.*; *Travelers Cas. & Sur. v. Corbin* (*In re First Cincinnati, Inc.*), 286 B.R. 49, 51 (B.A.P. 6th Cir. 2002) (citations omitted). The burden of proving that a party is a "person aggrieved" is on the appellant asserting standing to pursue an appeal. *Fidelity Bank*, 77 F.3d at 882.

Courts rarely find that a Chapter 7 debtor is a "person aggrieved" by a bankruptcy court order regarding the disposition of property of the estate. *Monus v. Lambros*, 286 B.R. 629, 634 (N.D. Ohio 2002).

> The advent of the chapter 7 estate and the appointment of the chapter 7 trustee divest the chapter 7 debtor of all right, title and interest in nonexempt property of the estate at the commencement of the case. Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property.

*Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001) (citing 11 U.S.C. §§ 541(a) and 704(a)); *see also* 11 U.S.C. § 323. Pursuant to 11 U.S.C. § 727, the chapter 7 discharge releases the debtor from all personal liability for his debts. These Bankruptcy Code sections work together to greatly restrict a chapter 7 debtor's standing to appeal an order from the bankruptcy court. "[A] hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *In re El San Juan Hotel*, 809 F.2d 151, 154-55 (1st Cir. 1987) (citations omitted). As a result, the chapter 7 trustee is often the only party who has standing to appeal an order that impacts the disposition of property of the estate. *Richman v. First Woman's Bank* (*In re Richman*), 104 F.3d 654, 657 (4th Cir. 1997).

There are two exceptions to a chapter 7 debtor's limited standing:

> (1) if the debtor can show that a successful appeal would generate assets in excess of liabilities, entitling the debtor to a distribution of surplus under Bankruptcy Code 726(a)(6), . . . or (2) the order appealed from affects the terms of the debtor's discharge in bankruptcy.

*Kowal v. Malkemus* (*In re Thompson*), 965 F.2d 1136, 1144 n.12 (1st Cir. 1992) (citations omitted). If the debtor fails to present concrete evidence that either exception applies, he does not have standing to challenge a bankruptcy court order. *United States v. Jones*, 260 B.R. 415, 418 (E.D. Mich. 2000). To proceed under the first exception, the debtor "cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such surplus is a reasonable possibility." *In re Rake*, 363 B.R. 146, 151 (Bankr. D. Idaho 2007) (quoting *Cult Awareness Network, Inc. v. Martino* (*In re Cult Awareness Network, Inc.*), 1997 WL 327123 (N.D. Ill. 1997)).

In the case presently before the Panel, Amir has failed to meet his burden of demonstrating he has standing to appeal the January 12, 2009, Order avoiding the pre-petition transfer or the August 3, 2009, Order granting the Trustee's motion to sell the Gates Mills property. The claims filed in Amir's bankruptcy case total $13,190,436.69. Of this amount, $6,641,342.85 are general unsecured claims. The Gates Mills property is the debtor's primary asset. The Cuyahoga County Auditor's value of the property is $1,274,800 for the 2007 tax year. There are no recorded mortgages or liens on the Gates Mills property with the exception of money owed for past due real estate taxes. Despite its near lien-free status, the Trustee's liquidation of the property will not come close to satisfying the secured and administrative claims in the case, let alone provide any recovery to Amir's unsecured creditors. There is simply no possibility that a successful appeal would generate surplus assets that would be returned to Amir at the conclusion of his case. Amir also failed to establish that either order affects the terms of his discharge.

After case number 09-8051 was filed, the Panel asked the parties to submit briefs on the limited issue of standing. Amir argued in his brief that he has standing to challenge the avoidance order because he has an ownership interest in the Gates Mills property under a leasehold agreement

7

executed between himself and IMC Mortgage Corporation ("IMC"). The Trustee argued in his brief that Amir was judicially estopped from claiming this interest because he has consistently stated that he was not the owner of the Gates Mills property at the time his case was filed. The Trustee is correct. Amir has consistently stated in both the bankruptcy court and in documents filed with the Panel that he was not the owner of the Gates Mills property at the time his case was filed. Instead, Amir alleged that he transferred the property to IMC sixteen months prior to the filing of the petition. As such, Amir has argued that the sale was final and unavoidable by the Trustee and IMC was the rightful owner of the property at the time the case was filed.

Based on Amir's assertions and the conclusions of the bankruptcy court, the only party who had any interest in the Gates Mills property at the time the case was filed was IMC. IMC did not appeal the bankruptcy court's January 12, 2009, Order avoiding its lien and Amir did not meet his burden of demonstrating he has standing to appeal either order. As a result, case number 09-8002 is DISMISSED. That portion of case number 09-8051 which concerns the August 3, 2009, Order granting the Trustee's motion to sell the Gates Mills property is also DISMISSED.

**C.     February 25, 2009, Order denying Amir's motion to void the sale and August 3, 2009, Order clarifying there is no stay in effect pending appeal**

"If events occur during the pendency of a litigation which render the court unable to grant the requested relief, the case becomes moot" and a court has no jurisdiction to review the matter. *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (internal citation and quotation marks omitted). As with standing, the Panel is under an independent obligation to *sua sponte* determine if an issue is moot. *Berger v. Cuyahoga Co. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993).

In the case before the Panel, the bankruptcy court issued an order denying Amir's motion to void the sale of his 2007 Bentley on February 25, 2009. The sale was initially approved on January 7, 2009. Amir did not seek a stay of the sale pending appeal at any time during his case. The Bentley was sold by the Trustee. Consequently, his appeal of the February 25, 2009, Order is statutorily moot pursuant to 11 U.S.C. § 363(m). *Parker v. Goodman* (*In re Parker*), 499 F.3d 616,

621 (6th Cir. 2007) (citing *In re 255 Park Plaza Assocs. Ltd. P'ship*, 100 F.3d 1214, 1216 (6th Cir. 1996)). The only jurisdiction an appellate court has over an unstayed sale order is to determine if the buyer was a good faith purchaser, an issue which was not raised in these appeals. *Weingarten Nostat, Inc. v. Serv. Merch. Co., Inc.*, 396 F.3d 737, 742 (6th Cir. 2005). As a result, the Panel has no jurisdiction over the February 25, 2009, Order denying Amir's motion to void the sale. *Demis*, 558 F.3d at 512. That portion of case number 09-8012 that concerns the February 25, 2009, Order denying Amir's motion to void the sale of the 2007 Bentley is moot and is DISMISSED.

Amir's appeal of the August 3, 2009, Order clarifying there is no stay in effect is also moot. The bankruptcy court reinstated the stay on September 30, 2009. As such, there is no relief the Panel can give Amir in his appeal of that order. *Demis*, 558 F.3d at 512. Consequently, that portion of case number 09-8051 that concerns the August 3, 2009, Order clarifying there is no stay in effect is moot and is hereby DISMISSED.

**D.** **August 3, 2009, Orders granting the Trustee's motion to change the locks and the Trustee's application to employ a realtor**

Orders which grant or deny applications to employ professionals are typically found to be interlocutory. *Cottrell v. Schilling* (*In re Cottrell*), 876 F.2d 540, 542 (6th Cir. 1989). In the case of *Black Diamond Mining Co. v. Official Comm. of Unsecured Creditors* (*In re Black Diamond Mining Co.*), 400 B.R. 207 (B.A.P. 6th Cir. 2009), the Panel found that it lacked jurisdiction to review an interlocutory order denying an application to employ counsel. *Id.* at 208. Based on Amir's failure to allege any error with the employment order aside from the "automatic dismissal" of his case, the Panel finds that it lacks jurisdiction to review the order granting the Trustee's application to employ a realtor in this case as well. Accordingly, that portion of case number 09-8051 which appeals the August 3, 2009, Order granting the Trustee's application to employ a realtor is DISMISSED.

The August 3, 2009, Order granting the Trustee's motion to change the locks on the real property is also interlocutory. The August 3, 2009, Order was issued in furtherance of the Trustee's

9

statutory duty to collect and liquidate the debtor's assets. *See* 11 U.S.C. § 704(a)(1). It did not finally resolve any issues between the parties nor did it involve a controlling issue of law. As a result, the Panel denies leave to appeal and it is without jurisdiction to review the order. That portion of case number 09-8051 which appeals the August 3, 2009, Order granting the Trustee's motion to change the locks is DISMISSED.

## II. ISSUES ON APPEAL

The remaining issues in these appeals are whether the bankruptcy court erred: (1) in denying Amir's emergency motion to strike the petition and retroactively annul the automatic stay, and (2) in denying Amir's emergency motion to dismiss his bankruptcy case pursuant to 11 U.S.C. § 521(i).[1]

---

[1]Amir's briefs in these matters also assert that the bankruptcy court erred in converting the case from chapter 13 to chapter 7, in issuing an arrest warrant and incarcerating Amir, and in overruling Amir's various objections to claims. Although the order converting the case was appealed in a prior case, BAP case number 08-8065, that appeal was dismissed on November 3, 2008, for failure to designate the record. The order issuing an arrest warrant was not appealed nor were any of the orders overruling Amir's objections to claims. Pursuant to Federal Rule of Bankruptcy Procedure 8002(a), those orders became final and unappealable ten days after their issuance. Fed. R. Bankr. P. 8002(a); *Walker v. Bank of Cadiz* (*In re LBL Sports Center, Inc.*), 684 F.2d 410, 411-12 (6th Cir. 1982). As a result, Amir's failure to file a timely notice of appeal of those orders deprives the Panel of jurisdiction to review them. *Id.*

In his appellant brief in case number 09-8051, Amir has also asserted that the bankruptcy court lacked personal jurisdiction over him based on his alleged lack of United States citizenship. Although Amir filed numerous motions to dismiss alleging various jurisdictional defects throughout his bankruptcy case, it was not until August 31, 2009, some fifteen months after the case was filed, that Amir alleged the bankruptcy court did not have jurisdiction over him because he is "a Non U.S. Citizen of National status." Amir moved for dismissal of his case under this new theory on August 31, 2009, September 23, 2009, and September 29, 2009, (collectively "citizenship motions"). The bankruptcy court denied all three of these motions and Amir did not appeal any of those decisions. As a result, the Panel does not have jurisdiction to review the bankruptcy court's denial of the citizenship motions. Fed. R. Bankr. P. 8002(a); *LBL Sports Center, Inc.*, 684 F.2d at 412.

## III. FACTS

On May 16, 2008, Louis D. Amir ("Amir") filed a chapter 13 petition for bankruptcy relief. Amir failed to include copies of payment advices or a certificate of credit counseling with his petition. According to the petition and schedules in his case, Amir resided at 1860 Surrey Place, Gates Mills, Ohio, ("Gates Mills property"). Amir's petition did not disclose an ownership interest in the Gates Mills property. The only creditors listed on Amir's schedules or in his chapter 13 plan were four secured creditors with claims on Amir's four luxury vehicles.

On July 2, 2008, the chapter 13 trustee filed a motion to convert Amir's case to chapter 7 due to his failure to appear at the § 341 meeting and failure to make payments under the chapter 13 plan. Amir failed to file a response to the Trustee's motion to convert and did not appear at the hearing on the Trustee's motion. On August 4, 2008, the bankruptcy court granted the Trustee's motion and the chapter 13 case was converted to one under chapter 7. Upon conversion of the case, David O. Simon ("Trustee") was appointed as the Chapter 7 Trustee. Amir did not successfully file an appeal of the conversion order.

On July 8, 2008, Amir filed a second voluntary petition under chapter 13 in an attempt to correct certain deficiencies (Case no. 08-15219). Because Amir already had a pending chapter 7 case, the court dismissed case number 08-15219 on October 3, 2008.

Between September 8, 2008, and October 22, 2008, Amir filed three separate motions to dismiss the bankruptcy case. In his first two motions, Amir asserted that the court lacked jurisdiction based on the trustee's failure to properly serve Amir with the motion to convert the bankruptcy case to chapter 7. In making his argument, Amir stated that "[o]n May 16, 2008, Debtor Amir attempted to file a Chapter 13 Bankruptcy Petition with this Court" but that the filing was "fatally defective" based on Amir's failure to file necessary documents including a matrix, schedules, statements, a certificate of credit counseling and payment advices. Amir did not assert that these filing defects were a basis for dismissal of his case in either of his first two motions to dismiss.

11

On September 10, 2008, the bankruptcy court denied the first motion to dismiss to the extent that Amir was seeking dismissal of the bankruptcy case. To the extent Amir sought reconsideration of the August 4, 2008, Order converting the case to chapter 7, the bankruptcy court continued the motion. Amir appealed the court's order denying his request for dismissal of the bankruptcy case. The appeal was subsequently dismissed for lack of prosecution. A hearing was conducted, *sua sponte*, regarding Amir's request for reconsideration of the conversion order. At the hearing, Amir refused to testify and invoked the Fifth Amendment in response to several questions. On October 8, 2008, the bankruptcy court denied Amir's request for reconsideration in open court. Amir did not appeal this order.

On October 8, 2008, the bankruptcy court denied Amir's second motion to dismiss. Amir did not appeal the court's order.

In Amir's third motion to dismiss filed on October 22, 2008, Amir first made his allegation that he did not prepare, sign, or file his two chapter 13 petitions. Amir instead alleged that an associate, Daphne Stokes, ("Stokes"), had signed and filed the petition without Amir's approval or knowledge.

The Trustee filed a memorandum in opposition to Amir's motion to dismiss. The Trustee asserted that Amir's motion was barred by the doctrines of judicial estoppel, collateral estoppel, res judicata, and/or law of the case because: Amir had previously set forth some of the same arguments regarding jurisdiction in his first and second motions to dismiss; Amir had failed to make any allegations about the signing or filing of his petition in either of his two prior motions to dismiss, and therefore Amir had waived the argument; and Amir had repeatedly admitted that he voluntarily commenced the bankruptcy case in other pleadings filed with the bankruptcy court, the United States District Court[2] and Ohio state court.[3] The Trustee alleged that Amir's admissions had the effect of

---

[2] On October 23, 2008, Amir filed a complaint in the United States District Court for the Northern District of Ohio against the bankruptcy court judge, Judge Arthur I. Harris, the Trustee and the Trustee's counsel. The complaint alleged that the defendants violated Amir's civil rights in

12

ratifying Amir's bankruptcy filing. Amir filed an objection to the Trustee's Memorandum in Opposition.

On November 25, 2008, the bankruptcy court denied Amir's third motion to dismiss. The order states

[for] the reasons contained in the Trustee's Memorandum in Opposition (docket # 234), the debtor's Third Motion to Dismiss (docket # 166) is denied. The Court does not believe that an evidentiary hearing on the debtor's Third Motion to Dismiss (docket # 166) is necessary; even if the facts proffered by the debtor in open court on November 18, 2008, are true the Court would still deny the motion.

Amir did not appeal the court's order.

In addition to the motions to dismiss, Amir filed numerous pleadings in the bankruptcy court between August 22, 2008, and October 16, 2009: (1) Objection to the Trustee's motion for authority to change locks on the Gates Mills property (August 22, 2008); (2) Answer and Amended Answer to the Trustee's complaint seeking to avoid a pre-petition transfer of the Gates Mills property (September 25, 2009, and October 16, 2009);[4] (3) Emergency motion to stay proceedings

converting his case from chapter 13 to chapter 7. Amir affirmatively stated in his complaint that he "filed a in [sic] pro se petition in the United States Bankruptcy Court for the Northern District of Ohio seeking relief under Chapter 13 of Title 11 of the United States Code." The District Court complaint was dismissed based on judicial immunity and failure to state a claim upon which relief could be granted.

[3]In August 2008, Amir was added as a defendant in a proceeding in the Court of Common Pleas of Cuyahoga County, Ohio (Toys "R" Us - Delaware, Inc. v. Zaddok Development Corporation). Attorney Andrew Hoffman sent a letter to the attorney for Toys "R" Us which contained a "Notice of Filing of Bankruptcy By New Party Defendant, Louis Amir." A notice of Amir's bankruptcy filing was also filed with the Cuyahoga Court of Common Pleas on August 14, 2008.

[4]Amir's only reference to the filing was his statement in his second answer to the complaint that "[o]n May 16, 2008, a petition was filed in the United States Bankruptcy Court for the Northern District of Ohio seeking relief Under Chapter 13 of Title 11 of the United States Code." Amir did not follow this sentence with any allegation that someone other than himself had filed the petition.

13

(September 11, 2008); (4) Motion to strike all of plaintiff's pleadings (September 16, 2008); (5) Motion requesting Judge Harris recuse himself (September 16, 2008); (6) Second emergency motion to stay proceedings (September 16, 2008); (7) Second motion to strike all of plaintiff's pleadings (September 25, 2008); and (8) Objection to all claims, except the claims for the 2007 Cadillac, the 2007 Bentley, and the 2007 Rolls Royce (September 29, 2008). Amir did not allege in any of these pleadings that the bankruptcy case had been filed without his knowledge or consent.

On February 20, 2009, Amir filed an emergency motion to strike his petition and retroactively annul the automatic stay ("motion to strike"). The bankruptcy court's order on this motion is the first order that is the subject of this opinion. Amir's motion to strike repeated his allegations that Stokes had signed and filed his bankruptcy petition without his knowledge. Amir then asserted that the bankruptcy court lacked jurisdiction over his case based on his failure to comply with 11 U.S.C. § 109(h) and Federal Rule of Bankruptcy Procedure 9011(a). As an additional basis for dismissal, Amir alleged that the Trustee had violated Federal Rule of Civil Procedure 60(b) by making misrepresentations to the bankruptcy court concerning Amir's third motion to dismiss.

The Trustee filed a response to Amir's motion to strike on February 23, 2009. The Trustee asserted that Amir's motion to strike was little more than a reiteration of his prior unsuccessful motions to dismiss. The doctrines of law of the case, res judicata, collateral estoppel and judicial estoppel all barred Amir's arguments regarding the bankruptcy court's jurisdiction over his case. Additionally, the Trustee argued that there was no legal basis for striking or annulling a petition ten months after the case was filed and in which the Trustee had already administered and collected assets.

The bankruptcy court entered an order denying the debtor's motion to strike his petition on February 25, 2009. The bankruptcy court based its denial on its interpretation of § 109(h) and

The only thing done without his knowledge, according to this answer, was the conversion of his case to chapter 7 on August 4, 2008. Amir's second answer to the amended complaint restated this allegation.

14

Bankruptcy Rule 9011(a). Amir filed a notice of appeal of the bankruptcy court's denial of his motion to strike on March 6, 2009. This appeal was assigned BAP case number 09-8012.

On March 2, 2009, in another attempt to dismiss his case, Amir filed an emergency motion to dismiss pursuant to 11 U.S.C. § 521(i)(1) ("§ 521 motion"). The bankruptcy court's order on the § 521 motion is the second order that is the subject of this opinion. Amir asserted that because he had failed to file all the documents listed in § 521(a)(1)(A) and (B)(i) - (iii), his case was subject to the "automatic dismissal" provision of § 521(i). After cursorily discussing his automatic dismissal claims, Amir then segued back to arguments previously raised in his motion to strike based on § 109(h), Bankruptcy Rule 9011(a), and Civil Procedure Rule 60(b).

The bankruptcy court conducted a hearing on Amir's § 521 motion on March 10, 2009. Amir did not appear at the hearing. The bankruptcy court entered an order denying Amir's § 521 motion on March 17, 2009.

Amir filed an appeal of this order on March 17, 2009. This appeal was assigned BAP case number 09-8017.

## IV. DISCUSSION

Since September, 2008, Amir has consistently argued that the bankruptcy court did not have jurisdiction over him and, therefore, his case should be dismissed. What has not been consistent, however, is the alleged cause for the jurisdictional defect. Initially, Amir argued that his case should be dismissed because it was improperly converted from chapter 13 to chapter 7. Amir based this argument on the chapter 13 trustee's alleged failure to properly serve him with notice of the motion to convert as required by Federal Rule of Civil Procedure 4. As the case progressed, Amir began to argue that his case should be dismissed because he did not sign or file the petition nor did he comply with § 109(h)'s credit counseling requirement. When the bankruptcy court refused to dismiss Amir's case for these alleged deficiencies, Amir then argued pursuant to 11 U.S.C. § 521(i), that his case

15

was "automatically dismissed" on the 46th day due to his failure to file the payment advices within the proscribed time period. Based on Amir's failure to properly appeal the August 4, 2008, conversion order, the only issues properly before the Panel are whether failure to comply with Bankruptcy Rule 9011, § 109(h) or § 521(a)(1) mandates dismissal of a chapter 7 debtor's case upon the debtor's motion to dismiss.

As a starting point, the Panel recognizes that a chapter 7 debtor does not have an absolute right to dismiss his case. 11 U.S.C. § 707(a); *Sicherman v. Cohara* (*In re Cohara*), 324 B.R. 24, 27 (B.A.P. 6th Cir. 2005). Instead, § 707(a) provides that "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause . . . ." 11 U.S.C. § 707(a). Section 707(a) applies to motions filed by debtors seeking dismissal of a chapter 7 case. *Cohara*, 324 B.R. at 27. The decision to dismiss under § 707(a) is an equitable determination and is within the bankruptcy court's discretion. *Indus. Ins. Servs., Inc. v. Zick* (*In re Zick*), 931 F.2d 1124, 1126 (6th Cir. 1991).

As the movant, a debtor seeking to voluntarily dismiss his case has the burden of demonstrating that cause exists under § 707(a). *Cohara*, 324 B.R. at 366. Section 707(a) lists three examples of "cause;" however, these grounds are illustrative only. *Zick*, 931 F.2d at 1126. "Accordingly, the courts must engage in [a] case-by case analysis in order to determine what constitutes 'cause' sufficient to warrant dismissal." *Dinova v. Harris* (*In re Harris*), 212 B.R. 437, 442 (B.A.P. 2nd Cir. 1997). " 'If dismissal would prejudice the creditors, then it will ordinarily be denied.' " *Cohara*, 324 B.R. at 27 (citing *Peterson v. Atlas Supply Corp.* (*In re Atlas Supply Corp.*), 857 F.2d 1061, 1063 (5th Cir. 1988)). "Prejudice exists where assets which would be available for distribution are lost as a result of the dismissal." *Cohara*, 324 B.R. at 27 (internal quotation marks and citations omitted); *see also In re Harker*, 181 B.R. 326, 328 (Bankr. E.D. Tenn. 1995) ("[I]f creditors are prejudiced in any respect by the dismissal or if the trustee has acquired funds for distribution, a request by the debtor for dismissal will be denied.").

Although Amir's February 20, 2009, emergency motion to strike his petition and March 2, 2009, emergency motion to dismiss did not specifically seek dismissal of his case under § 707(a),

16

the Panel must consider whether dismissal of Amir's case is equitable to his creditors. The Supreme Court has held that bankruptcy courts may use their 11 U.S.C. § 105(a) equitable powers to achieve a proper result in making determinations. In *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S. Ct. 1105 (2007), the Supreme Court was asked to decide whether a chapter 7 debtor's seemingly absolute right to convert was subject to a bad faith exception. *Id.* at 373-74. The Court determined that it was. *Id*. After examining 11 U.S.C. §§ 706(d) and 1307(c), the Supreme Court looked to the role 11 U.S.C. § 105(a) played in the inquiry:

> Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.

549 U.S. at 374-75, 127 S. Ct. at 1111-12 (footnotes omitted). Since its issuance, courts have applied *Marrama*'s holding to find that a court's equitable powers under § 105(a) are broad and may be used to "achieve a result that the Code clearly required." *Perez v. Peake*, 373 B.R. 468, 488 (S.D. Tex. 2007); *Hildebrand v. Kimbro* (*In re Kimbro*), 389 B.R. 518, 531 n.9 (B.A.P. 6th Cir. 2008).

Amir based his requests for dismissal on three statutory arguments. First, Amir argued that his failure to sign the petition required the court to "strike" the petition under Rule 9011(a) which provides that "[a]n unsigned paper shall be *stricken . . . .*" Fed. R. Bankr. P. 9011(a) (emphasis added). Secondly, Amir asserted that his failure to obtain the § 109(h) pre-petition credit counseling made him ineligible to be a debtor. Based on this alleged ineligibility, Amir argued that no case was commenced when his petition was filed. Lastly, Amir asserted that § 521(i) provides that his failure to file all of the information required under § 521(a)(1) resulted in the "automatic dismissal" of his case on the 46th day. The Panel will address each of these arguments separately.

17

## A. Federal Rule of Bankruptcy Procedure 9011

Amir alleges that he did not sign or file his bankruptcy petition. Instead, Amir claims that Stokes signed and filed his petition without his knowledge. Amir argues that his alleged failure to sign the petition violates Rule 9011(a). Amir also has alleged that the forged petition is a contract which is "rendered unlawful and unenforceable against" him because he "has never given offer and acceptance of the bankruptcy petition." Despite this forgery, Amir continued to participate in his bankruptcy case, alleging that he did so only "under **EXTREME DURESS**." (Appellee's App. 6/1/09 at 805-06.)

Pursuant to Title 11 of the United States Code, a voluntary bankruptcy case "is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a). Federal Rule of Bankruptcy Procedure 9011(a) mandates that every petition or pleading filed in bankruptcy court be signed by the attorney of record, or if the debtor is *pro se*, by the debtor himself. Fed. R. Bankr. P. 9011(a). Oftentimes, when a debtor fails to sign a petition or pleading, or his signature is forged, courts dismiss the underlying bankruptcy case. *Willis v. Rice* (*In re Willis*), 345 B.R. 647, 651 (B.A.P. 8th Cir. 2006). However, "[n]o provision of the Bankruptcy Code, the Bankruptcy Rules or any other authority *requires* the Court to dismiss a debtor's case merely because he or she failed to sign the petition," where the facts of the case mandate a different result. *In re Rose*, 422 B.R. 896, 899 (Bankr. S.D. Ohio 2010) (emphasis added); *Willis*, 345 B.R. at 651.

For example, there are instances in which dismissal is deemed inappropriate based on the debtor's subsequent ratification of the allegedly forged document. *Willis*, 345 B.R. at 651.

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act ... is given effect as if originally authorized by him." *Riss v. Angel*, 131 Wash.2d 612, 636, 934 P.2d 669 (1997). The principal ratifies the prior act if, with full knowledge of the facts, he "accepts the benefits of the acts" or assumes that an obligation is imposed. *Id*. And any conduct manifesting an intent to treat an unauthorized act as authorized,

18

such as failure to repudiate a contract, supports a finding of ratification. *Rayonier Inc. v. Polson*, 400 F.2d 909, 915 (9th Cir. 1968).

*In re Eicholz*, 310 B.R. 203, 207-08 (W.D. Wash. 2004). The *Eicholz* court held that although the mere passage of time alone could not serve to ratify a bankruptcy filing, the receipt of benefits from the allegedly unauthorized act, namely the protections of the automatic stay, could. *Id.* Other courts have found that a debtor's failure to mention that she had not signed the petition in prior pleadings or at court hearings served to ratify the filing of an unsigned petition. *Willis*, 345 B.R. at 654. Active participation in a case can also ratify a defective filing. *First State Bank of Newport v. Beshears* (*In re Beshears*), 196 B.R. 468, 473 (Bankr. E.D. Ark. 1996). Filing amendments to schedules and opposing motions for relief are considered active participation in a case. *Willis*, 345 B.R. at 654.

In Amir's case, there is no doubt that both the passage of time and Amir's participation in the case demonstrate that he ratified the filing of the petition. The case was filed May 16, 2008. Amir did not assert he had not filed the case or signed the petition until October 22, 2008, when he filed his third motion to dismiss. Prior to that time, between August 25, 2008, and October 22, 2008, Amir filed no less than eleven pleadings in the bankruptcy court. Amir never alleged in any of these pleadings that he had not signed or filed the petition. In fact, in several of the pleadings he stated that he attempted to file a chapter 13 bankruptcy petition on May 16, 2008, but that it was fatally defective. Amir also appeared in the bankruptcy court on August 26, 2008, and "made no effort to disavow that a bankruptcy petition was filed on his behalf and with his knowledge. Rather, he admitted that the filing he had made was incomplete and that he had hoped to correct the deficiencies but instead had filed another Chapter 13 case not knowing that the first Chapter 13 case was still pending." (Appellee's App. 6/1/09 at 863.)

Even after first raising the issue in his October 22, 2008, motion to dismiss, Amir was inconsistent with reiterating his claim that Stokes signed and filed the petition without his knowledge. He made no mention of the forged petition in any of his numerous objections to claims or in his objections to the Trustee's motions to sell the Gates Mills property or his Bentley. He also

19

failed to raise the forged petition argument in his district court civil rights complaint against Judge Harris, the Trustee and the Trustee's attorneys. The district court complaint was filed one day after his October 22, 2008, motion to dismiss. In this complaint, Amir made no mention of his bankruptcy petition being forged and fraudulently filed. Instead, in the first paragraph of his complaint, Amir stated "[o]n May 16, 2008, Plaintiff Louis D. Amir, who is an African American, filed a in [sic] pro se petition in the United States Bankruptcy Court for the Northern District of Ohio seeking relief under Chapter 13 of Title 11 of the United States Code." Had his petition been forged and fraudulently filed, it would seem only logical to have raised that issue in a lawsuit alleging misconduct on the part of Judge Harris and other court officers in the administration of his assets. This is especially true considering that the district court complaint was filed one day after Amir first raised the forged petition argument in the bankruptcy court.

In his briefs in this appeal, Amir has argued that his statements about attempting to file a chapter 13 bankruptcy petition on May 16, 2008, were mere "scrivener error[s] and mistake[s] of the fact." Black's Law Dictionary defines a "scrivener error" as a synonym for "clerical error." Black's Law Dictionary 1375 (8th ed. 2004). In turn, a "clerical error" is defined as

> [a]n error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination. Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call.

*Id.* A scrivener's error is "mechanical in nature." *United States v. Zabawa*, 134 Fed. App'x 60, 68 (6th Cir. 2005) (unpublished).

The record before the Panel amply supports the bankruptcy court's conclusion that Amir's statements about attempting to file a bankruptcy petition on May 16, 2008, were not mere scrivener's errors. Amir's arguments about a scrivener's error did not address his appearances and statements in court or his pleadings in the district court lawsuit. Additionally, Amir made no effort to disavow the filing of the petition when he first appeared in bankruptcy court on August 26, 2008.

20

Throughout the entire pendency of his case, Amir has enjoyed the benefits of the automatic stay. It was only after the Trustee began to pursue recovery of the Gates Mills property that Amir began making his forged petition argument. Amir actively used the protections of the automatic stay to shield himself from the Ohio state court lawsuit filed by Toys-R-Us by filing a plea of bankruptcy on August 14, 2008. In addition, the bankruptcy court, the case Trustee and Amir's creditors all relied on Amir's failure to dispute the validity of his case. The case Trustee collected and sold assets for the benefit of Amir's creditors. The bankruptcy court conducted hearings and approved various motions. The court presided over the claims allowance process. Based on all of these facts, the Panel concludes that Amir has ratified the filing of his bankruptcy petition.[5] The bankruptcy court's refusal to dismiss his case based on the allegedly forged signature argument was not an abuse of discretion and is affirmed.

**B.      11 U.S.C. § 109(h)**

Amir also alleged in his February 22, 2009, motion to strike his bankruptcy petition that his failure to comply with § 109(h) mandated dismissal of his case. The bankruptcy court denied Amir's motion on February 25, 2009. In addressing the motion, the bankruptcy court first looked at the question of whether § 109(h)'s pre-petition credit counseling requirement was jurisdictional. The bankruptcy court recognized the split of authority on the issue and eventually agreed with courts holding that a court has discretion to retain a case even though a debtor has failed to comply with § 109(h). Consequently, the bankruptcy court denied Amir's motion.

Section 109(h) mandates that

an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by

---

[5]Because the Panel finds that, even if Amir's petition was forged, he ratified it, the Panel does not have to address the issue of whether Amir actually did sign the petition.

21

telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

11 U.S.C.A. § 109(h).

Courts are divided as to whether failure to satisfy § 109 mandates dismissal of a case. Some courts have held that a court has the discretion to waive a debtor's non-compliance with § 109(h). *Mendez v. Salven* (*In re Mendez*), 367 B.R. 109, 118 (B.A.P. 9th Cir. 2007); *In re Nichols*, 362 B.R. 88, 93 (Bankr. S.D.N.Y. 2007); *In re Parker*, 351 B.R. 790, 800-01 (Bankr. N.D. Ga. 2006); *In re Hess*, 347 B.R. 489, 494 (Bankr. D. Vt. 2006). These decisions are based largely on the conclusion that failure to satisfy § 109(h) is an eligibility question as opposed to a jurisdictional issue and that "strict compliance with the credit counseling requirements of § 109(h) can be waived[.]" *Mendez*, 367 B.R. at 118. These courts also hold that a court has the discretion to determine whether declining to exercise jurisdiction based on the failure to comply with § 109(h) "would result in manifest injustice." *Nichols*, 362 B.R. at 93.

Other courts have held that strict compliance with the credit counseling requirement is mandatory and a "[c]ourt simply lacks jurisdiction over a debtor's case where the debtor fails to comply with § 109(h)." *In re Giles*, 361 B.R. 212, 214 (Bankr. D. Utah 2007); *Clippard v. Bass*, 365 B.R. 131, 136 (W.D. Tenn. 2007); *Hedquist v. Fokkena* (*In re Hedquist*), 342 B.R. 295, 298 (B.A.P. 8th Cir. 2006). These courts have held that if a debtor does not comply with § 109(h), a court has no discretion but to dismiss the case. *Giles,* 361 B.R. at 214; *Clippard*, 365 B.R. at 136; *Hedquist*, 342 B.R. at 298. These decisions are based largely on the conclusion that the plain meaning of § 109's statutory language is clear and " 'the sole function of the courts is to enforce it according to its terms.' " *In re Cleaver*, 333 B.R. 430, 432 (Bankr. S.D. Ohio 2005) (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989)). These cases hold that dismissal is mandatory even if it leads to harsh or inequitable results. *Hedquist*, 342 B.R. at 300.

Neither the Sixth Circuit Court of Appeals nor the Sixth Circuit BAP has addressed the issue of § 109(h) as it relates to eligibility for bankruptcy relief, nor has any other circuit court of appeals.

22

Several circuit appellate courts have, however, addressed the issue of whether eligibility under other subsections of 11 U.S.C. § 109 is jurisdictional. These decisions have all found that eligibility under § 109 is not jurisdictional in nature. *Glance v. Carroll* (*In re Glance*), 487 F.3d 317, 321 (6th Cir. 2007) ("... the eligibility requirements of § 109(e) create a gateway into the bankruptcy process, not an ongoing limitation on the jurisdiction of the bankruptcy courts."); *Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares* (*In re Hamilton Creek Metro. Dist.*), 143 F.3d 1381, 1385 n.2 (10th Cir. 1998); *Promenade Nat'l. Bank v. Phillips* (*In re Phillips*), 844 F.2d 230, 236 n.2 (5th Cir. 1988); *see also In re Estrella*, 257 B.R. 114, 117 (Bankr. D. P.R. 2000) ("Section 109 of the Bankruptcy Code establishes the eligibility of a debtor to file a bankruptcy petition, but does not determine the jurisdiction of the bankruptcy court to act." Jurisdiction is instead determined by looking to 28 U.S.C. 1334 and 28 U.S.C. § 157).

In cases where debtors "have attempted to use their own non-compliance strategically in order to have their cases dismissed when further proceedings were not to their benefit," most courts have held that a court has the discretion to waive the § 109(h) requirement. *In re Lilliefors*, 379 B.R. 608, 611 (Bankr. E.D. Va. 2007); *Mendez*, 367 B.R. at 118; *In re Timmerman*, 379 B.R. 838 (Bankr. N.D. Iowa 2007); *Parker*, 351 B.R. at 800; *see also In re Crawford*, 420 B.R. 833, 838-39 (Bankr. D. N.M. 2009) (recognizing that failure to comply with § 109(h) ordinarily mandates dismissal of a case, but opining that when "there is [ ] evidence to suggest that a debtor is purposely manipulating the bankruptcy system in order to avoid the trustee's administration of estate assets, a debtor's failure to comply" with § 109(h) may lead to a different result). Oftentimes courts faced with these types of debtors find them to be unsympathetic and disingenuous movants. *Mendez*, 367 B.R. at 118. This is especially true when the debtor does not move for dismissal under § 109(h) until after a court has found significant assets that can be sold for the benefit of the estate. *Id.*; *Parker*, 351 B.R. at 797. These decisions are based largely on issues of statutory interpretation and the doctrine of judicial estoppel. *See Parker*, 351 B.R. at 799 (where "[t]he Court entered a number of Orders with the consent of the Debtor based upon Debtor's implicit representation that he was eligible for bankruptcy relief . . ." the court held that "[a]llowing the Debtor to change his position would make a mockery of the bankruptcy process–the precise situation that the application of

23

judicial estoppel guards against."); *Timmerman*, 379 B.R. at 847 ("Allowing Timmermans to dismiss to the prejudice of creditors would impair the integrity of the bankruptcy system.").

In *Parker*, the bankruptcy court concluded that § 109(h)'s eligibility requirements were not jurisdictional and "because the bankruptcy court retains the authority to determine the debtor's eligibility, the court must have jurisdiction over a case commenced by an ineligible debtor." *Parker*, 351 B.R. at 796. The court concluded that such a determination "is certainly a matter which 'arises in a case under Title 11.' " *Id.* (citing 28 U.S.C. § 1334(a)). Because the eligibility issue was not jurisdictional, the *Parker* court held that the § 109(h) requirements could be waived by a court. *Id.* at 797.

In the present case, the bankruptcy court concluded that Amir had waived his right to move for dismissal based on his failure to comply with § 109(h). A waiver can be either express or constructive and can be inferred from conduct. *Toledo Trust Co. v. Peoples Banking Co.* (*In re Hartley*), 52 B.R. 679, 685 (Bankr. N.D. Ohio 1985). "As a general rule, the doctrine of waiver is applicable to all personal rights and privileges, whether secured by contract, conferred by statute, or guaranteed by the Constitution, provided that the waiver does not violate public policy." *Sheskey v. Tyler-Smith*, 770 N.E.2d 161, 164 (Ohio Ct. Com. Pl. 2002).

Amir did not allege he was ineligible to be a debtor under § 109(h) until February 20, 2009, when he filed his motion to strike. Prior to this filing, he had appeared in the bankruptcy court on numerous occasions and filed several pleadings with the court, including three motions to dismiss. Although Amir acknowledged in some of these filings that he had failed to file the credit counseling certificate, he never alleged this defect made him ineligible to be a debtor. It was only after the bankruptcy court avoided IMC's lien on the Gates Mills property and ruled that it was property of the estate, that Amir began asserting he was ineligible for bankruptcy relief under § 109(h). The bankruptcy court's conclusion that Amir waived his § 109(h) argument was not clearly erroneous. Moreover, the facts in this case demonstrate the exact type of abuse of process that the *Marrama* decision was designed to protect against. Accordingly, the bankruptcy court did not abuse its

24

discretion in denying Amir's motion to dismiss his case for failure to comply with § 109(h) and the decision is affirmed.

## C.      11 U.S.C. § 521(i)

In his March 2, 2009, motion to dismiss, Amir asserted that his failure to file his payment advices resulted in his case being automatically dismissed pursuant to § 521(i). The bankruptcy court denied Amir's motion on March 17, 2009. In so doing, the bankruptcy court recognized the split of authority on the issue of whether § 521(i) requires automatic dismissal of a case when a debtor fails to file the information required by § 521(a). The bankruptcy court concluded that a bankruptcy court does have some discretion over whether to dismiss a case pursuant to § 521(i)(1). Amir's refusal to cooperate with the Trustee or comply with court orders led the bankruptcy court to conclude that " 'waiver [of the § 521(a) requirements] is needed to prevent automatic dismissal from furthering a debtor's abusive conduct . . . .' ." *Simon v. Wells Fargo Bank* (*In re Amir*), No. 08-13700, AP No. 08-1258, 2009 WL 1616670 *7 (Bankr. N.D. Ohio March 17, 2009) (citing *Segarra-Miranda v. Acosta-Rivera* (*In re Acosta-Rivera*), 557 F.3d 8, 13 (1st Cir. 2009)).

Prior to BAPCPA in 2005, § 521(a)(1) required debtors to file a list of creditors, a schedule of assets and liabilities, a statement of current income and expenses and a statement of the debtor's financial affairs. 11 U.S.C. § 521(a)(1) (1994). When BAPCPA went into effect in October 2005, § 521(a) was amended to require a debtor to file additional types of financial information, including copies of payment advices. 11 U.S.C. § 521(a)(1)(B)(iv). The BAPCPA amendments also added subsection (i) to § 521. This new subsection provides:

> (i)(1) Subject to paragraphs (2) and (4) and notwithstanding section 707(a), if an individual debtor in a voluntary case under chapter 7 or 13 fails to file all of the information required under subsection (a)(1) within 45 days after the date of the filing of the petition, the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition.

(2) Subject to paragraph (4) and with respect to a case described in paragraph (1), any party in interest may request the court to enter an order dismissing the case. If requested, the court shall enter an order of dismissal not later than 5 days after such request.[6]

(3) Subject to paragraph (4) and upon request of the debtor made within 45 days after the date of the filing of the petition described in paragraph (1), the court may allow the debtor an additional period of not to exceed 45 days to file the information required under subsection (a)(1) if the court finds justification for extending the period for the filing.

(4) Notwithstanding any other provision of this subsection, on the motion of the trustee filed before the expiration of the applicable period of time specified in paragraph (1), (2), or (3), and after notice and a hearing, the court may decline to dismiss the case if the court finds that the debtor attempted in good faith to file all the information required by subsection (a)(1)(B)(iv) and that the best interests of the creditors would be served by administration of the case.

11 U.S.C. § 521(i) (2008).[7]

There is a split of authority on the interpretation of § 521(i). Some cases hold that a court does not have discretion to waive the § 521(a)(1) filing requirements after expiration of the 45 day filing deadline. *In re Spencer*, 388 B.R. 418 (Bankr. D. D.C. 2008); *In re Ackerman*, 374 B.R. 65 (Bankr. W.D.N.Y. 2007); *In re Hall*, 368 B.R. 595 (Bankr. W.D. Tex. 2007). These courts find that § 521(i)'s "shall be automatically dismissed" language is unambiguous and that a "[c]ourt's hands are tied by the operation of the express language of" the statute. *In re Ott*, 343 B.R. 264, 265 (Bankr. D. Colo. 2006); *In re Fawson*, 338 B.R. 505, 510 (Bankr. D. Utah 2006) ("[Section 521(i)] provides that the case is automatically dismissed on the 46th day if an individual debtor fails to file the § 521(a)(1) papers within 45 days of filing the petition. Automatic means 'acting or operating in a manner essentially independent of external influence or control.' ").

---

[6]Effective December 1, 2009, Congress amended 11 U.S.C. § 521(i)(2) to provide that "the court shall enter an order of dismissal not later than 7 days after such request;" however, because Amir's case was filed in May 2008, his case is controlled by the pre-December 2009 version of § 521(i)(2) which provides that the court shall enter the dismissal order within 5 days of the request.

[7]See note 6 supra.

Other cases, including the only two circuit appellate courts to consider the issue, hold that a court does retain some discretion to waive the § 521(a)(1) filing requirements after expiration of the 45 day filing deadline. *Wirum v. Warren* (*In re Warren*), 568 F.3d 1113 (9th Cir. 2009); *Acosta-Rivera*, 557 F.3d at 13; *In re Jackson*, 348 B.R. 487 (Bankr. S.D. Iowa 2006); *Parker*, 351 B.R. at 800.

In *Acosta-Rivera*, the debtors moved for dismissal of their chapter 7 case under § 521(i) over six months after filing their bankruptcy petition. *Acosta-Rivera*, 557 F.3d at 10. As grounds for their motion, the debtors alleged that they had failed to file payment advices and a statement of monthly net income as required by § 521(a)(1)(B)(iv) and (v). The debtors' motion to dismiss was filed after the Trustee moved for leave to settle a previously undisclosed state court lawsuit that would have paid all of the Acosta-Riveras' creditors in full and provided a surplus to the debtors. *Id.*

The bankruptcy court denied the debtors' motion and entered an order excusing the debtors from filing the payment advices required under § 521(a)(1)(B)(iv). *Id.* at 11. On appeal, the district court reversed the bankruptcy court's decision and held that the bankruptcy court did not have any discretion to waive compliance with § 521(a)(1)(B). *Id.*

On appeal, the First Circuit reversed the district court and found that a court does indeed have discretion to waive a debtor's compliance with § 521(a)(1). The First Circuit relied heavily on the "unless the court orders otherwise" language found in § 521(a)(1)(B):

> The grant of judicial power to "order[ ] otherwise" predated BAPCPA. In overhauling section 521, Congress left this familiar language intact. We do not regard that as a mere fortuity. Nor do we think that a slip of the pen accounts for the fact that the provision does not now contain an explicit deadline for ordering otherwise. In this context, we have a high regard for congressional silence.

27

*Id.* at 12 (footnote omitted). The First Circuit concluded that a bankruptcy court is the best judge of what information is necessary and must be filed under § 521(a) and, as such, retains the discretion to waive compliance with § 521(a)(1)(B). *Id.* at 14.

In making its decision, the First Circuit stated that its holding was limited to cases in which "there is no continuing need for the information or a waiver is needed to prevent automatic dismissal from furthering a debtor's abusive conduct." *Id.* at 14. The First Circuit was concerned that a strict reading of § 521(a) and (i) could offer bad faith debtors a new gateway for abuse:

> Because any party in interest may request an order of automatic dismissal, debtors with something to hide are liable to treat dismissal as an escape hatch to be opened as needed. In such cases, the court has no occasion to address non-disclosure until long after the forty-five-day period has elapsed. That timetable rubs uneasily against the strictures of an inflexible reading-and bankruptcy courts are, after all, courts of equity.
>
> . . .
>
> The amendments to section 521 are part of an abuse-prevention package. With Congress's core purpose in mind, we are reluctant to read into the statute by implication a new limit on judicial discretion that would encourage rather than discourage bankruptcy abuse. It is safe to say that Congress, in enacting BAPCPA, was not bent on placing additional weapons in the hands of abusive debtors.

*Id.* at 13 (citations omitted).

The Ninth Circuit interpreted the meaning of 11 U.S.C. § 521(i) in *Wirum v. Warren* (*In re Warren*), 568 F.3d at 1113. In that case, the debtor's petition included a list of creditors but did not include the other financial information required by § 521(a). Almost five months after filing his case, the debtor filed a motion to dismiss in which he alleged that this deficiency resulted in the automatic dismissal of his case on the 46th day pursuant to § 521(i). *Warren*, 568 F.3d at 1115. The bankruptcy court denied Warren's motion holding that "dismissal is not mandated where the debtor is seeking to take advantage of . . . § 521(i) to the prejudice of his creditors." *In re Warren*, 2007 WL 1079943 *1 (Bankr. N.D. Cal. 2007).

28

On appeal, the district court reversed the bankruptcy court. *Warren v. Wirum*, 378 B.R. 640, 647 (N.D. Cal. 2007). The district court found that the plain language of § 521(i) required dismissal of a case when a debtor fails to comply with § 521(a) by filing all of the required information. *Id.* In so ruling, the district court recognized that the automatic dismissal provision may lead to harsh and inequitable results especially in cases in which a debtor seeks "to manipulate the bankruptcy process by intentionally withholding documents required under § 521;" however, the district court found that "this is a problem that can only be resolved by Congress, and not the courts." *Id.*

The Ninth Circuit Court of Appeals reversed the district court and found that a court does have discretion to waive the § 521(a) filing requirement even after the 45-day filing deadline has passed. *Warren*, 568 F.3d at 1117. The Ninth Circuit agreed with the First Circuit's *Acosta-Rivera* decision and based its conclusion on § 521(a)(1)(B)'s "unless the court orders otherwise" language. Because no subsection in § 521 puts a time limit on the court's ability to "order[ ] otherwise" and because Congress did not alter the "orders otherwise" provision when it passed BAPCPA, the Ninth Circuit concluded that Congress did not intend to impose a time limit on the court's ability to "order otherwise." *Id.* at 1118. The Ninth Circuit found this conclusion further supported the Congressional purpose in enacting BAPCPA: preventing abusive bankruptcy filings. *Id.*

The Panel agrees with the Ninth Circuit's reasoning in *Warren* and the First Circuit's reasoning in *Acosta-Rivera* and holds that bankruptcy courts have the authority to waive § 521(a)(1)'s filing requirements if enforcing those requirements would create an abuse of the bankruptcy process.

Amir failed to raise the § 521(i) issue until March 2, 2009–ten months after filing his case. Amir never presented any proof to the bankruptcy court that any payment advices even exist for him. His petition lists his occupation as CEO of RXC Appraisals. His monthly income is listed as $19,890.00. Despite this large monthly income, Amir's chapter 13 plan only proposed to pay $480 per month for four luxury vehicles. Those payments were never made and Amir's case was converted to chapter 7. Since that time, the Trustee has been collecting and liquidating Amir's

assets to pay creditors. There is no proof that Amir's payment advices will have any impact at this stage of the case except to allow Amir to further a pattern of abuse. As the bankruptcy court recognized in its opinion, Amir ignored orders of the court on a continual basis and refused to cooperate with the Trustee. Only after discovering that undisclosed assets were going to be collected and liquidated did Amir move for dismissal under § 521(i).

Accordingly, the bankruptcy court did not error and the court's March 17, 2009, Order denying Amir's motion to dismiss under § 521(i) is affirmed.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the February 25, 2009, Order denying Amir's motion to strike his petition and retroactively annul the stay and AFFIRM the March 17, 2009, Order denying Amir's emergency motion to dismiss his case pursuant to 11 U.S.C. § 521(i).