# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

05-6058EA

_____

| | | |
|---|---|---|
| In re : Eula Mystery Willis, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| Eula Mystery Willis, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Debtor - Appellant, | * | Eastern District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| M. Randy Rice; Midfirst Bank; | * | |
| Midland Mortgage Company; | * | |
| John Walker; Michael Byrd; | * | |
| Albert Sweets; Jacqueline Ogden, | * | |
| | * | |
| Objectors - Appellees. | * | |

_____

Submitted:  May 22, 2006
Filed: June 29, 2006

_____

FEDERMAN, MAHONEY AND McDONALD, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

This is an appeal from an Order of the United States Bankruptcy Court for the Eastern District of Arkansas[1] issued on November 29, 2005, in which the court denied the Debtor's Motion to Convert or Dismiss. We affirm.

FACTUAL BACKGROUND

Debtor Eula Mystery Willis is the sole owner of three corporate entities: Mystery Properties, Inc., a real estate development company with a number of real estate projects in varying stages of progress; First Start Properties, Inc., a real estate holding company with a number of rental properties occupied by tenants; and Q Solutions, Inc., a software engineering company. By the summer of 2005, many of the loans secured by the companies' various parcels of real estate were in default, and the lenders had begun foreclosure proceedings. Willis was also being sued by other creditors and at least one of them had obtained a judgment against her. Sometime around June of 2005, she sought the advice of counsel regarding filing for bankruptcy protection to prevent the lenders from foreclosing and the creditors from executing on judgments. She paid her attorney $1,500, plus the filing fee, in anticipation of filing a bankruptcy petition.

On July 21, 2005, Willis' attorney filed an individual Chapter 13 bankruptcy Petition on her behalf. Although Willis' name was typed on the signature line on the original Petition and Schedules, as is customary when a case is filed electronically, Willis states she did not sign the original documents prepared by her attorney, nor was she able to review them prior to filing. She states she did not authorize the filing of the Petition that day.

The next day, July 22, 2005, Willis' attorney filed a Motion to Dismiss the case, requesting "permission to dismiss her previously filed Chapter 7 [sic], which was filed

---

[1] The Honorable Audrey R. Evans, United States Bankruptcy Court for the Eastern District of Arkansas.

inadvertently."[2]   Willis says this Motion to Dismiss was also filed without her authority.  On July 25, 2005, Willis' attorney filed a motion to convert the case to Chapter 7, saying "[t]he Chapter 13 bankruptcy was inadvertently filed and should have been filed as a Chapter 7."  On July 27, he filed a "Notice of Conversion" to Chapter 7.  That same day, the case was converted to Chapter 7.  Willis then requested, and obtained, a continuance of an August 17 Meeting of Creditors.[3]

Shortly thereafter, the mortgage holders on several of Willis' companies' real properties began filing motions for relief from stay.  Willis filed responses to each of these motions, requesting that they be denied.

On August 15, Willis moved to convert the case back to Chapter 13.  She requested a continuance of the § 341 Meeting of Creditors then set for September 1, asserting that her attendance at the September 1 Meeting would be needless if the case was converted back to Chapter 13.  The Chapter 7 Trustee opposed the request to convert to Chapter 13.  He also opposed the request for continuance of the September 1 Meeting of Creditors, asserting that Willis had refused to turn over requested documents, and suggesting that continuing the Meeting again would result in undue delay, particularly since several motions for relief from stay were pending.  The Trustee further requested the court to compel Willis to appear at the September 1 Meeting, which the court did.

On August 30, Willis filed a Motion to Withdraw the July 22 Motion to Dismiss, which had not been ruled by the court, although it was probably moot due to the subsequent conversion of the case from Chapter 13 to Chapter 7 and the

---

[2] Although the Motion to Dismiss referred to the case as a Chapter 7 case, it was filed under Chapter 13.

[3] Although Willis' counsel requested a continuance of the August 17 Meeting of Creditors because he was unable to attend that day, the Meeting was actually continued automatically due to the conversion of the case to Chapter 7.

pending motion to convert the case back to Chapter 13. Willis attended the September 1 Meeting of Creditors, at which she stated, in response to a question by a judgment creditor, that she had not signed the original Petition. This was the first time she had mentioned this to anyone in the case.

On September 8, 2005, attorney Andrew L. Clark filed a Motion to Substitute Attorney on Willis's behalf, saying that Willis had discharged her prior attorney. The next day, September 9, through her new counsel, Willis filed a Motion to Dismiss or Convert to Chapter 11, for the first time saying to the court that she did not sign the original Petition and Schedules, and saying that she never intended for her assets to be liquidated. Counsel pointed out that Willis did not qualify for Chapter 13 because her liabilities exceeded the statutory limits for Chapter 13. He requested her case be either dismissed or converted to Chapter 11, asserting that unsecured creditors would fare better in a reorganization than they would in a Chapter 7 liquidation.

Again, the Chapter 7 Trustee opposed the Motion to Dismiss or Convert, alleging, among other things, that Willis had benefitted from the automatic stay; she had transferred virtually all of her assets to insiders and such transfers could be recovered for the benefit of the estate; some of the parcels of real estate subject to pending motions for relief from stay had equity; Willis had acted in bad faith throughout the proceedings; and she would continue to make fraudulent transfers if the case was dismissed. Several creditors also opposed the motion, also pointing out that Willis had benefitted from the automatic stay; that she had been several months delinquent in payments prior to filing the Petition; that she had not made any post-petition payments; and that the creditors would suffer detriment and delay if the case were to be dismissed.

Meanwhile, numerous additional motions for relief from stay were filed by creditors, and Willis responded to each of those, requesting that the relief be denied.

In so doing, she asked the court to continue giving her the benefit of the automatic stay.

On November 15, the court held a hearing on Willis' Motion to Dismiss or Convert to Chapter 11. At the conclusion of the hearing, the court denied the Motion to Dismiss or Convert, issuing its rulings from the Bench. On November 29, the court entered an Order memorializing that ruling, and further ordering Willis to account for and turn over to the Chapter 7 Trustee all proceeds from the real properties received by Mystery Properties or First Start Properties, or any other entity in which Willis held an interest, except for proceeds Willis collected from the operation of her computer software business, Q Solutions. Willis was also ordered to turn over to the Chapter 7 Trustee all deeds and mortgages associated with all properties owned by Willis, Mystery Properties, Fresh Start Properties, and any other entity owned by Willis.

Willis appeals from this Order. Meanwhile, she filed a Motion for Stay Pending Appeal or for Supersedeas, which the bankruptcy court denied, again ordering Willis to turn over documents. On January 10, 2006, we also denied an Emergency Motion for Stay Pending Appeal. And, on December 9, 2005, the court granted the Chapter 7 Trustee's motion to take over operations of Willis' businesses.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[4] We review the legal conclusions of the bankruptcy court

---

[4]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

*de novo.*[5]  A decision whether to dismiss a case "will only be reversed if the court abused its broad discretion."[6]

## DISCUSSION

Willis argues that the bankruptcy court erred in denying her Motion to Dismiss or Convert because she did not sign the original Petition and Schedules and, therefore, they were deficient and invalid.

Rule 1008 requires that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."[7]  In addition, Rule 9011 requires that:

> Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented shall sign all papers. . . . .  An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.[8]

Willis also cites cases in which courts have dismissed bankruptcy cases because the debtors did not sign the petitions or other documents requiring signature.[9]  No one disputes the premise that dismissal will generally be appropriate in cases where the

---

[5]*First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

[6]  *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 378 (8th Cir. 2000).

[7]  Fed. R. Bankr. P. 1008.

[8]  Fed. R. Bankr. P. 9011(a).

[9]  *See e.g., In re Phillips*, 433 F.3d 1068 (8th Cir. 2006); *In re Wenk*, 296 B.R. 719, 727 (Bankr. E.D. Va. 2002); *In re Harrison*, 158 B.R. 246, 248 (Bankr. M.D. Fla. 1993).

debtor did not sign the petition and fails to promptly correct the deficiency. But, as the bankruptcy court in this case found, the facts here mandate a different result.

To summarize, the bankruptcy court held that Willis was estopped from asserting the deficiency in her Petition and Schedules because she enjoyed the benefits, and none of the detriments (such as filing accurate schedules and cooperating with the trustee), of filing a bankruptcy petition, and because of the complete disrespect she had shown to her creditors. We agree.[10]

> To constitute an equitable estoppel, there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice.

> To sustain an estoppel because of the omission to speak, there must be both the specific opportunity and the apparent duty to speak. The party maintaining silence must have known that some one was relying thereon, and was either acting, or about to act, as he would not have done had the truth been told.

> In order to constitute an equitable estoppel by silence or acquiescence, it must be made to appear that the facts upon which it is sought to make

---

[10] We do not, by this Opinion, trivialize the importance of filing properly executed and verified documents as required under the Bankruptcy Code, Rules, and applicable local rules and procedures. The manner in which this case was originally filed and handled was clearly inappropriate and, perhaps, as the bankruptcy court noted, subject to disciplinary action or sanctions. *See In re Phillips*, 433 F.3d at 1071-72 (noting that a bankruptcy court may award sanctions against an attorney under Rule 9011 for filing a petition without the debtor's signature, but finding they were not warranted in that particular case). However, under the circumstances of this case, including Willis' pre- and post-bankruptcy conduct, we agree with the bankruptcy court that Willis is estopped from seeking a dismissal here. Alternatively, as discussed more fully below, we find that she ratified the defective filing.

7

the estoppel operate were known to the parties against whom the estoppel is urged.[11]

Willis concedes that she learned that her attorney had filed the original Petition, without her signature, very shortly after it was filed. She also does not dispute that she had an affirmative obligation to speak up about the defective filing. Instead, she argues that she did speak up and that "[m]otions were timely filed, but were not timely heard" by the bankruptcy court. The record, however, belies this assertion.

Despite knowing about the filing, Willis did not mention to anyone that she had not signed the original Petition until her § 341 Meeting on September 1, 2005, nearly ten weeks after the bankruptcy petition was filed. Prior to that time, Willis' attorney had requested a continuance of the original Meeting, which had been set for August 17, because he was unable to attend. Willis' attorney also requested a continuance of the September 1 Meeting on the ground that Willis had filed the motion to convert the case to Chapter 13. The Chapter 7 Trustee opposed this motion to continue the Meeting, alleging that Willis had refused to turn over requested documents, and suggesting that continuing the Meeting again would result in undue delay, particularly since several motions for relief from stay were pending. The Trustee even requested the court to compel Willis to appear at the September 1 Meeting, which the court did. In addition, prior to the September 1 Meeting, Willis had filed three motions to convert or dismiss, in none of which did she mention that she had not signed her original Petition.[12] Furthermore, by the time of the Meeting, she had amended her

---

[11] *Rath Packing Co. v. Paul Blood Farms, Inc.*, 419 F.2d 13, 17 (8th Cir. 1969) (citation omitted). *See also Wiser v. Lawler*, 189 U.S. 260, 270, 23 S.Ct. 624, 628, 47 L.Ed.802 (1903) (to constitute an estoppel by silence there must be something more than an opportunity to speak, there must be an obligation); *Brixey v. Union Oil Co. of Calif.*, 283 F.Supp. 353 (W.D. Ark. 1968) ("[e]stoppel by silence or inaction is often referred to as estoppel by 'standing by'"; the underlying principle is embodied in the maxim "one who is silent when he ought to speak will not be heard to speak when he ought to be silent.").

[12] Presumably, these are what counsel refers to as Willis' "timely filed" motions which were not "timely heard." Although Willis' current counsel was not involved in the case until

schedules five times and responded in opposition to three motions for relief from stay. She also filed a Motion to Withdraw the original Motion to Dismiss, again failing to mention that she did not sign the original documents. In addition, throughout this time, the Trustee was communicating with Willis or her attorney in attempts to obtain documents. Nevertheless, despite these numerous opportunities to do so, both in court and out, at no time up to the actual September 1 Meeting did Willis indicate she had not signed the petition.

Even after that point, after she fired her previous attorney and hired her current counsel, her actions have consistently reinforced her desire to enjoy the benefits of her bankruptcy case. She has filed numerous responses in opposition to motions for relief from stay and she has amended her schedules on several occasions. And, although her new attorney filed the instant Motion to Dismiss or Convert her case to Chapter 11 shortly after he was hired (finally alleging in a court document that she had not signed the original Petition), that Motion sought conversion as an alternative to dismissal.

Finally, it is abundantly clear from the Willis' testimony at the hearing on the Motion that she intended, and still desires, to be in a bankruptcy case, thereby enjoying the benefits and protections associated with being a debtor in bankruptcy. We found no less than ten instances in the transcript where Willis testified she wanted to be in bankruptcy, albeit in a reorganization case.[13] At one point, she even testified

---

later, we find the allegation that the motions were not "timely heard" somewhat disingenuous in view of the fact that none of those previous motions to dismiss and convert mentioned that she had not signed the Petition. And, in the meantime, Willis requested continuances of both her August 17 and September 1 Meetings of Creditors, and she repeatedly failed to appear at scheduled hearings, appearing only when specifically ordered to do so under threat of contempt.

[13] Tr. at 25 (stating that one of the reasons why she sought protection of the bankruptcy court was because she was "getting behind on some of these mortgages or some of these payments"); Tr. at 48 (stating that "difficulty servicing the mortgages". . . "was one of the things that prompted [her] to file [her] original bankruptcy petition"); Tr. at 48 (stating that she "needed to get [her] Mystery Property debt under reorganization"); Tr. 49 (stating that she went in to her

9

that if her case were dismissed, she intended to file a new Chapter 11 case and that she would do so "today" if she could.[14]

We conclude that the record contains ample support for the bankruptcy court's conclusion that Willis is estopped from seeking a dismissal based on the deficiencies in her original Petition. "A decision of whether to grant a motion to voluntarily dismiss a bankruptcy petition lies within the discretion of the bankruptcy judge and is reviewed only for an abuse of discretion."[15] Accordingly, the bankruptcy court's order denying Willis' motion to dismiss her case was not an abuse of discretion.

Moreover, although it did not expressly form a basis for the bankruptcy court's decision to deny the Motion to Dismiss, the record also supports a finding that Willis ratified the defective filing by actively participating in the bankruptcy case, albeit only in ways she deemed beneficial to her. Although she has repeatedly failed to turn over documents, failed to appear at hearings, and refused to abide by the orders of the court, she has also, among other things, affirmatively taken advantage of the automatic stay by keeping proceeds from her real estate without making payments to creditors, she has opposed numerous motions for relief from stay, and she has filed several

---

original bankruptcy attorney's office and told him she wanted to do a reorganization); Tr. at 52 (stating that her understanding in July 2005 was that she was "going to be in a business 13 reorganization"); Tr. at 54 (stating she did not discharge her original attorney when she discovered her case had been converted to Chapter 7 because the attorney told her he could get everything straightened out and that she would be "back in a 13"); Tr. at 71 (responding in the affirmative that "you wanted to go bankruptcy, didn't you?" and stating she had paid her attorney $1,500 in June of 2005); Tr. at 72 (stating, in response to the question that she "wanted in bankruptcy," "Yes, I wanted reorganization"); Tr. at 80 (stating that she planned to file a Chapter 11 reorganization if her case is dismissed, and that she would do so "today"); Tr. at 110 (responding in the affirmative that she wants "some relief in bankruptcy court some kind of way"); Tr. at 124 (stating that, in July 2005, she "intended to file a reorganization bankruptcy").

[14] Tr. at 80.

[15] *In re Turpen*, 244 B.R. 431, 433 (B.A.P. 8th Cir. 2000) (citations omitted).

10

amendments to her schedules.[16] Accordingly, the court's refusal to dismiss the case for defective filing is further supported by Willis' ratification of it.

Furthermore, based on Willis' conduct in this case, we cannot say that the bankruptcy court's refusal to convert the case to Chapter 11 was erroneous. Under § 706(a), '[t]he debtor may convert a case under this chapter to a case under chapter 11 . . . at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title."[17] Since this case has been previously converted under § 1307, this provision is not applicable.[18]

---

[16] *Accord In re Beshears*, 196 B.R. 468, 473 (Bankr. E.D. Ark. 1996) (finding that an individual debtor ratified her schedules at the § 341 meeting and by filing amended schedules, "such that she is a debtor in bankruptcy" and that her failure to sign the original schedules did not relieve her of her obligations under § 727(a)(5) to explain the loss of assets); *In re Hager*, 108 F.3d 35, 39-40 (4th Cir. 1997) (listing cases applying ratification to validate by relation-back a jurisdiction originally lacking); *In re Martin-Trigona*, 760 F.2d 1334, 1341 (2d. Cir. 1985) (holding that ratification may be established by proof that benefits were derived through the act in question or through participation in the act itself, and that the debtor-corporation and sole stockholder "acquiesced in and ratified" filing by their ensuing participatory conduct); *Boyce v. Chem. Plastics, Inc.*, 175 F.2d 839, 842-44 (8th Cir.1949) (holding that an unauthorized bankruptcy filing was ratified and jurisdiction thereby validated by later board of directors' resolution; "[a] corporation, like an individual, may ratify and thereby render binding upon it the originally unauthorized acts . . . of its officers or other agents"), *cert. denied* 338 U.S.828, 70 S.Ct. 77, 94 L.Ed.503 (1949); *In re I.D. Craig Serv. Corp.*, 118 B.R. 335, 337-38 (Bankr. W.D. Pa 1990) (finding unauthorized filing by corporation president ratified by ensuing conduct of board of directors and denying the debtor's motion to dismiss the case).

[17] 11 U.S.C. § 706(a).

[18] We note that, even in cases which have not been previously converted, there is a split of authority as to whether the right to convert is absolute, and the Supreme Court has recently agreed to hear the issue. *See In re Marrama*, 430 F.3d 474 (1st Cir. 2005), *cert. granted* ___ S.Ct. ____, 2006 WL 316685 (June 12, 2006). *See also In re Copper*, 426 F.3d 810 (6th Cir. 2005) (holding that the right to convert a case is not absolute); *In re Young*, 269 B.R. 816 (Bankr. W.D. Mo. 2001) (holding that the better reasoned cases have held that the court has discretion to deny conversion of a previously unconverted case when there is a showing of bad faith, abuse of the bankruptcy process, or where conversion would violate the purposes and policy of the Bankruptcy Code).

Section 706(b), which is applicable, provides that, on request of a party in interest, and after notice and hearing, the court may convert a Chapter 7 case to Chapter 11 at any time.[19] "The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest."[20]

The record in this case amply supports the court's decision on this issue because it is rife with examples of Willis' evasiveness and lack of cooperation with the Trustee. For example, Willis has continually refused to turn over documents to the Trustee, despite numerous requests and court orders requiring that she do so. She repeatedly claimed that she has not produced documents on the advice of her counsel. When she finally appeared at a show cause hearing relating to document production, she showed up without a single document, saying she was waiting to be specifically ordered, by a written order of the court, to produce them. The court was finally forced to threaten Willis with contempt and incarceration if she did not produce the documents.

Similarly, Willis candidly testified that she advised her tenants to send rent payments directly to her, in direct contravention of a letter from the Trustee to the tenants directing them to make payments to him. She has refused to make an accounting or turn over funds relating to proceeds from her rental and real estate development properties and, it appears, those monies may have been in the process of disappearing, if they have not already disappeared. Willis testified that she collects around $7,800 per month in rent, plus she has collected deposits from renters, and at least $10,000 on a contract to purchase one of the parcels of property. She never clearly testified what has happened to any of that money, except that she had "set

---

[19]  11 U.S.C. § 706(b).

[20]  H.R. Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), 1978 U.S.C.C.A.N. 5963; S. Rep. No.989, 95th Cong.2d Sess. at 94 (1978), 1978 U.S.C.C.A.N. 5787.

aside" the deposits of about $4,500 which she was storing in cash in a safe deposit box at her residence. She testified she receives some of the rents and deposits in cash, and she pays some expenses in cash, but that she does not keep records of every bill she pays. She certainly has not been using any of those funds to pay the secured lenders on those properties.

Finally, the Trustee has raised some very serious allegations as to Willis' prepetition conduct, in essence alleging significant fraudulent transfers to insiders. For example, the record suggests that Willis formed Fresh Start Properties in about April of 2005.[21] Around that same time, she transferred several parcels of real property she had held in her individual name to Fresh Start.[22] In addition, in February 2005, she transferred, for no consideration, real estate that had previously been owned in Mystery Property's name to her 22-year old son who was unemployed, purportedly to obtain refinancing under his name.[23] She did so without notifying the lenders who held mortgages on those properties at the time, and the son never acquired the refinancing on the properties. This was also about the same time some of Willis' creditors were filing lawsuits against her.

In sum, in light of the evidence of Willis' fraudulent, evasive, and uncooperative behavior, we agree with the bankruptcy court that this case belongs in a Chapter 7. Accordingly, the bankruptcy court did not err in denying the Motion to Dismiss or Convert to Chapter 11.

---

[21] Tr. at 38-39.

[22] Tr. at 40-42.

[23] Tr. at 59-66.

## CONCLUSION

For the reasons discussed above, we conclude that the bankruptcy court did not err in finding that Willis is equitably estopped from relying on the fact that she did not sign her original Petition and Schedules as grounds to have her case dismissed. In addition, her post-petition conduct ratified its filing. Consequently, the bankruptcy court did not err in denying Willis' Motion to Dismiss or Convert her case to Chapter 11. The judgment is affirmed.

_____