**IN RE: Laura J. BAKER, a/k/a Laura J. Solon, Debtor.**

**Case No. 3:13–bk–296–PMG**

United States Bankruptcy Court, M.D. Florida.
**JACKSONVILLE DIVISION**

Filed December 10, 2013

Robert D. Wilcox, Wilcox Law Firm, Ponte Vedra Beach, FL, for Debtor.

Jamie W. Olinto, John T. Rogerson, III, Adams and Reese, LLP, Jacksonville, FL, for Creditor, Florida Bank.

Scott Bomkamp, United States Trustee, Orlando, FL, for U.S. Trustee.

Jerrett M. McConnell, Friedline & McConnell, P.A., Jacksonville, FL, for Trustee.

Chapter 7

**ORDER ON FLORIDA BANK'S MOTION TO CONVERT TO CHAPTER 11 PURSUANT TO 11 U.S.C. § 706(b)**

PAUL M. GLENN, United States Bankruptcy Judge

**THIS CASE** came before the Court for a final evidentiary hearing to consider Florida Bank's Motion to Convert to Chapter 11 Pursuant to 11 U.S.C. § 706(b). (Doc. 46).

Under § 706(b) of the Bankruptcy Code, the Court has the discretion to convert a Chapter 7 case to a case under Chapter 11 "based on what will most inure to the benefit of all parties in interest."

In this case, the Debtor is a medical doctor with net income in the approximate amount of $19,000.00 per month, and non-exempt assets in the scheduled amount of

$47,589.93. In a Chapter 11 case, the Debtor's post-petition earnings would be included in property of her bankruptcy estate. 11 U.S.C. § 1115(a)(2). Accordingly, conversion of this case will benefit the Debtor's creditors, because it will maximize the estate and enable the creditors to receive a greater distribution than they would receive in a Chapter 7 case.

Based on the record, the Court finds that conversion of the case will also benefit the Debtor. The Court acknowledges that the Debtor is eligible to seek Chapter 7 relief. Under the circumstances, however, conversion to a Chapter 11 case will provide the Debtor with a means to address the claims that have been asserted against her, including the claims of the Internal Revenue Service and Florida Bank.

For these reasons, the Court finds that conversion of this case will inure to the benefit of all parties in interest. Accordingly, Florida Bank's Motion should be granted, and the Debtor's case should be converted to a case under Chapter 11 pursuant to § 706(b) of the Bankruptcy Code.

### Background

The Debtor, Laura J. Baker, is 61 years of age, and currently married to William Baker. The Debtor and William Baker live apart, and are involved in a dissolution of marriage proceeding. (Doc. 76, p. 6; Transcript, pp. 52–53).

The Debtor is a physician. She is the sole owner and medical director of an entity known as Parthenon Medical Center, LLC (Parthenon), which operates a facility in Jacksonville that specializes in pain management and the treatment of addiction. (Doc. 76, p. 6; Transcript, pp. 37, 44).

On January 18, 2013, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

The Debtor owns no real property. On her schedules filed with the petition, the Debtor listed personal property with a total value of $53,589.93. The personal property primarily consists of certain household goods, her ownership interest in Parthenon, and a 2010 Land Rover. She claimed her interest in the vehicle as exempt to the extent of $1,000.00 in value, and also claimed other personal property as exempt to the extent of $5,000.00 in value pursuant to Florida law.

On her "Schedule I—Current Income of Individual Debtor," the Debtor stated that she receives income in the amount of $54,000.00 per month from Parthenon. On her "Schedule J—Current Expenditures of Individual Debtor," she stated that her current expenses total $19,400.00 per month, and that her net income is therefore $34,600.00 per month.

The Debtor's two primary creditors are the Internal Revenue Service (IRS) and Florida Bank.

The IRS filed a proof of claim in the Chapter 7 case in the amount of $1,316,536.72. (Claim No. 4–1). The claim includes three components: a secured claim in the amount of $53,589.93, an unsecured priority claim in the amount of $408,346.72, and a general unsecured claim in the amount of $854,600.07. The claim is based on income taxes for the tax years beginning in 2005 and ending in 2012.

Florida Bank filed a proof of claim in the Chapter 7 case in the amount of $512,033.30. (Claim No. 5–1). The claim is filed as a secured claim, and is based on a Final Judgment for Deficiency entered against the Debtor in the Circuit Court for St. Johns County, Florida, on June 7, 2012.

In the Motion presently under consideration, Florida Bank (the Bank) asks the Court to convert the Debtor's Chapter 7

case to a case under Chapter 11 of the Bankruptcy Code. According to the Bank:

> This is a case involving a medical doctor with significant net income (per her own Schedule I and J) who has filed Chapter 7 notwithstanding her ability to fund a Chapter 11 plan. Because she has substantial IRS debt, she is a non-consumer debtor and thus § 707(b) is inapplicable. However, the Debtor should not be permitted to receive a Chapter 7 discharge, simply because she is a non-consumer debtor, when she has substantial net income to commit to a repayment plan to repay her creditors.

(Doc. 46, p. 1). Consequently, the Bank asks the Court to convert the case pursuant to § 706(b) of the Bankruptcy Code.

### Discussion

Section 706 governs the conversion of Chapter 7 cases to other chapters of the Bankruptcy Code. Section 706(b) provides:

*11 USC § 706. Conversion*

. . .

> (b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time.

11 U.S.C. § 706(b).

Courts that have considered § 706(b) generally begin with two basic premises. First, the "decision whether to convert is left in the sound discretion of the court, based on *what will most inure to the benefit of all parties in interest.*" H.R.Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong. 2d Sess. at 94 (1978), *reprinted in* U.S.C.C.A.N. 5787 (Emphasis supplied).

And second, because § 706(b) does not provide any specific grounds for conversion, "a Court should consider anything relevant that would further the goals of the Bankruptcy Code." *In re Schlehuber,* 489 B.R. 570, 573 (8th Cir. BAP 2013); *In re Hardigan,* 490 B.R. 437, 445 (Bankr. S.D.Ga.2013); *In re Gordon,* 465 B.R. 683, 692 (Bankr.N.D.Ga.2012); *In re Lobera,* 454 B.R. 824, 853–54 (Bankr. D.N.Mex.2011).

### A. Benefit to creditors

A primary goal of the Bankruptcy Code is to maximize the value of the bankruptcy estate. *In re Lobera,* 454 B.R. at 854 (quoting *Toibb v. Radloff,* 501 U.S. 157, 163, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)). In evaluating a motion under § 706(b), therefore, courts may consider whether the bankruptcy estate will be enhanced if the case is converted to a Chapter 11. *In re Gordon,* 465 B.R. at 692 (Conversion of the case was "in the best interest of all the creditors, as it will maximize the Debtor's estate.").

In this case, the Court finds that conversion to a Chapter 11 case will benefit the Debtor's creditors, because it will maximize the bankruptcy estate and enable creditors to receive a greater distribution than they would receive in a Chapter 7 case.

### 1. The Chapter 7 estate

The Debtor's post-petition earnings are not property of the estate in her Chapter 7 case. See 11 U.S.C. § 541(a)(6) (Earnings from services performed by an individual debtor after the commencement of a case are excepted from property of the estate.).

The Debtor does not own any real property.

On her schedules, the Debtor listed personal property with a total value of $53,589.93. The personal property primarily consisted of certain household goods, her ownership interest in Parthenon ($11,-

434.29), and a 2010 Land Rover ($20,-000.00).

On April 9, 2013, an appraiser for the Chapter 7 Trustee performed an appraisal of the vehicle and the household goods located at the Debtor's residence. According to the appraisal, the total value of the items was $27,479.00. (Doc. 42).

The Debtor has claimed a portion of the personal property as exempt under Florida law to the extent of $6,000.00 in value.

If the case proceeds as a Chapter 7, therefore, the liquidation of the Debtor's assets will likely yield less than $40,000.00 for the estate, after the Debtor's allowable exemptions are taken into account.

### 2. The Chapter 11 estate

Conversion of the case will increase the estate, however, because the Debtor's post-petition earnings will be added to her scheduled assets as property of the Chapter 11 estate.

■■■ Pursuant to § 1115(a)(2) of the Bankruptcy Code, an individual debtor's post-petition earnings are included as property of the estate in a Chapter 11 case. Section 1115(a)(2) provides:

**11 USC § 1115. Property of the estate**
(a) In a case in which the debtor is an individual, property of the estate includes, in addition to the property specified in section 541—

. . .

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

11 U.S.C. § 1115(a)(2). The purpose of § 1115(a)(2) is to "harmonize the treatment of individual debtors in Chapter 11 with those in Chapter 13," where a debtor must commit his post-petition disposable income to payment of creditor's claims, *In re Martin,* 497 B.R. 349, 358 (Bankr. M.D.Fla.2013).

In this case, the evidence establishes that the Debtor has the capacity to earn significant post-petition income. She is a medical doctor, and the sole owner of Parthenon. The parties stipulated that her gross income in 2012 was $754,698.00. (Doc. 76, p. 6). On her Statement of Financial Affairs filed with the petition, the Debtor stated that her estimated gross income from Parthenon in 2011 was $846,000.00. (Doc. 1).

The Debtor currently receives net income of approximately $19,000.00 per month. (Transcript, pp. 123, 140–41). The Debtor testified, for example, that she believed her net income was $19,000.00 per month as of the date of trial. (Transcript, p. 62). She acknowledged that her gross income in wages and distributions from Parthenon totaled approximately $28,333.00 per month, and that her taxes equaled approximately $9,000.00 per month, for net income in the approximate amount of $19,000.00 per month. (Transcript, pp. 140–41).

In a Chapter 11 case, the Debtor's post-petition income would be property of the bankruptcy estate pursuant to § 1115(a)(2) of the Bankruptcy Code.

### 3. Ability to pay

■■■ Chapter 11 of the Bankruptcy Code is a rehabilitative process that allows a financially distressed business or individual to restructure its financial affairs through the implementation of a plan of reorganization. *In re Arts Dairy, LLC,* 432 B.R. 712, 716 (Bankr.N.D.Ohio 2010). In a Chapter 11 case, an individual debtor's post-petition earnings must be available for payment to creditors through the Chapter 11 plan.

Pursuant to § 1123(a)(8), for example, an individual Chapter 11 debtor must submit such post-petition income to creditors under a plan "as is necessary for the execution of the plan." 11 U.S.C. § 1123(a)(8).

 And pursuant to § 1129(a)(15), an individual Chapter 11 debtor must dedicate his projected disposable income to a plan under certain circumstances. *In re Schlehuber*, 489 B.R. at 574; *In re Pfeifer*, 2013 WL 5687512, at 2 (Bankr.S.D.N.Y.). Pursuant to § 1129(a)(15), "a proposed plan must do one of two things if a creditor objects to confirmation: either pay unsecured claims in full or the debtor must devote all of the debtor's disposable income over a five-year period to payment of claims." *In re Martin*, 497 B.R. at 358.

Essentially, § 1129(a)(15) corresponds to the means test that was adopted for consumer cases to "help ensure that debtors who can pay creditors do pay them." *In re Martin*, 497 B.R. at 358 (quoting *Ransom v. FIA*, —— U.S. ——, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011)).

 In determining whether to convert a Chapter 7 case to a case under Chapter 11, therefore, courts generally consider whether the debtor has sufficient disposable income to fund a Chapter 11 plan. *In re Schlehuber*, 489 B.R. at 574 ("The Debtor's ability to fund a Chapter 11 plan if he chooses to do so was certainly an important and relevant consideration" under § 706(b)); *In re Gordon*, 465 B.R. at 692–93("[A]bility to pay is certainly a factor that may be used in evaluating the appropriate chapter in which a debtor should operate to obtain a discharge.") (Emphasis in original).

In this case, the Debtor will have disposable income during the term of the plan.

The Debtor receives income from Parthenon in the form of gross wages in the amount of $4,333.00 per month, plus gross distributions in the approximate amount of $24,000.00 per month, for total gross income of $28,333.00 per month. After paying taxes of approximately $9,000.00, the Debtor receives net income from Parthenon in the approximate amount of $19,000.00 per month. (Transcript, pp. 122–24).

The Debtor's reasonable and actual expenses total approximately $7,615.00 per month. Although the Debtor signed a Financial Affidavit on August 12, 2013, in which she stated that her average monthly expenses total $17,615.33 per month (Bank's Exhibit 5), it appears that a number of the expenses listed in the Affidavit are unreasonable, hypothetical, or no longer incurred.

In the Affidavit, for example, she listed a payment to the IRS in the amount of $5,000.00 per month in settlement of her 2011 tax liability. At trial, however, the Debtor testified that she has not reached an agreement with the IRS and is not actually making the monthly payments. (Transcript, pp. 72, 79–80).

In the Affidavit, she also listed an expense in the amount of $5,000.00 per month for the home health care of her mother that will "begin shortly." (Bank's Exhibit 5, p. 4). It does not appear that her mother is a legal dependent of the Debtor, and the expenditures include transportation services and other non-medical expenses that are not prescribed. (Transcript, pp. 67–71, 83–86).

Finally, the Affidavit also includes the following claimed expenses:

1. $2,000.00 per month for the boarding of two pets.

2. $2,150.00 per month for food and household items, even though the Debtor lives alone. (Doc. 76, p. 6).

3. $433.00 for domestic help, even though the help had been "let go."

4. $1,400.00 for personal grooming, consisting of $200.00 for "nails," and $1,200.00 for "salon."

5. $1,000.00 for gifts

The Debtor testified that she had cut back on her grooming expenditures, and had discontinued her gift expenses. (Transcript, p. 81).

Consequently, the evidence indicates that a number of expenses listed in the Affidavit may be eliminated from the Debtor's budget as items that are either unreasonable or not actually paid. If such items are subtracted, it appears that the Debtor's stated monthly expenses of $17,615.33 may be reduced by at least $10,000.00 per month, or to an amount of approximately $7,615.00 per month.

As shown above, the Debtor's net income equals the approximate sum of $19,000.00 per month. After subtracting reasonable expenses in the approximate amount of $7,615.00 per month, therefore, it appears that the Debtor has disposable income of more than $10,000.00 per month that is available for the funding of a Chapter 11 plan.

### 4. Summary

For these reasons, the Court finds that conversion of the Debtor's case to a case under Chapter 11 will benefit the Debtor's creditors, because it will maximize the bankruptcy estate and enable creditors to receive a greater distribution than they would receive in a Chapter 7 case. As shown above, the liquidation of the Debtor's assets in a Chapter 7 case would likely yield less than $40,000.00 for the estate.

If the Debtor's case is converted to a case under Chapter 11, however, the bankruptcy estate will be increased by the addition of the Debtor's post-petition income, and her post-petition earnings will be available for payment to creditors under a plan. The Debtor's projected disposable income may exceed the sum of $10,000.00 per month. If her disposable income is dedicated to a Chapter 11 plan, therefore, creditors would receive a greater distribution than they would receive in her Chapter 7 case.

### B. Benefit to Debtor

■■■ Under the circumstances of this case, the Court finds that conversion will also benefit the Debtor, because it will provide a means to address the claims that have been asserted against her.

The Debtor's two primary creditors are the IRS and the Bank. The IRS filed Claim Number 4-1 in the total amount of $1,316,536.72, which includes a priority claim under § 507(a)(8) in the amount of $408,346.72. The Bank filed Claim Number 5-1 in the amount of $512,033.30.

The IRS's priority claim may not be dischargeable in the Debtor's Chapter 7 case pursuant to § 523(a)($l$)(A), and the Bank has obtained the entry of an Order delaying the Debtor's discharge until the disposition of its Motion to Convert, (Doc. 66). If the case proceeds under Chapter 7, therefore, the Debtor may be subject to further litigation and potentially nondischargeable liability with respect to her primary creditors.

In a Chapter 11 case, however, the Debtor may propose a Chapter 11 plan to pay the claims of the IRS and the Bank.

Section 1123(a) of the Bankruptcy Code, for example, provides that a Chapter 11 plan shall designate classes of claims (but not § 507(a)(8) claims), and specify the treatment of claims that are impaired under the plan. 11 U.S.C. § 1123(a)(1),(3). And § 1129(a)(9)(C) provides that a Chapter 11 plan cannot be confirmed unless the holder of a claim under § 507(a)(8) receives installment payments in the allowed amount of the claim within five years of

the petition date. 11 U.S.C. § 1129(a)(9)(C).

In other words, the Debtor may reduce or satisfy the debts owed to the IRS and the Bank through the Chapter 11 process, a result that may not be possible in a Chapter 7 case. See *In re Gordon*, 465 B.R. at 694 (Conversion was in the interest of the debtor, where a Chapter 11 case would allow him to avoid litigation relating to his discharge, and where a Chapter 11 plan was the "preferred method for dealing with payment" of his debt.).

The Debtor opposes conversion to a Chapter 11 case, based on her contention that she will be unable to propose a Chapter 11 plan that satisfies the requirements for confirmation set forth in § 1129(a)(9)(C). Specifically, the Debtor asserts that her income is insufficient to allow her to pay the priority tax claim of the IRS within five years of the petition date, as required by that section. (Transcript, pp. 135–40).

 For a Chapter 11 plan to be confirmed, of course, the proponent of the plan must show that the repayment terms are feasible, and that confirmation is not likely to be followed by liquidation or the need for further reorganization. 11 U.S.C. § 1129(a)(11). In considering conversion to Chapter 11, a Court may be inclined to "consider the prospects for reorganization in much the same way that it considers feasibility at a confirmation hearing." Instead of pre-determining the issue of feasibility at a conversion hearing, however, the Court should defer its findings on feasibility and the other requirements of § 1129 until a confirmation hearing is properly noticed and scheduled. *In re Wilderness Crossings, LLC*, 440 B.R. 484, 489 (Bankr. W.D.Mich.2010).

 Additionally, in the event that the Debtor in this case is unable to propose a confirmable plan, she is entitled to seek the re-conversion of her case to a case under Chapter 7, or the dismissal of her case, pursuant to § 1112(b) of the Bankruptcy Code.

 Section 1112(b)(1) provides for dismissal or conversion of a Chapter 11 case for cause, "on request of a party in interest." 11 U.S.C. § 1112(b)(1). "For purposes of section 1112(b)(1), a debtor is a party in interest." *In re Brewery Park Associates. L.P.* 2011 WL 1980289, at 14 n. 14 (Bankr.E.D.Penn.). Consequently, the Court is not satisfied that conversion of the case will force the Debtor to remain "trapped" in a Chapter 11 case where she cannot succeed. *In re Lobera*, 454 B.R. at 854.

The IRS and the Bank have filed claims in the Debtor's case that exceed the aggregate sum of $1,700,000.00, and at least a portion of the claims may be nondischargeable under Chapter 7 of the Bankruptcy Code. For the reasons discussed above, the Court finds that conversion of the Chapter 7 case to a case under Chapter 11 will benefit the Debtor, because it will provide a means to address the claims that have been asserted against her.

### Conclusion

Florida Bank has filed a Motion to Convert the Debtor's Chapter 7 case to a case under Chapter 11 pursuant to § 706(b) of the Bankruptcy Code.

The Debtor is a medical doctor with net income in the approximate amount of $19,000.00 per month, and nonexempt assets in the scheduled amount of $47,589.93. In a Chapter 11 case, the Debtor's postpetition earnings would be included in property of her bankruptcy estate. Accordingly, conversion of this case will benefit the Debtor's creditors, because it will maximize the estate and enable creditors to receive a greater distribution than they would receive in a Chapter 7 case.

Additionally, conversion of the case will benefit the Debtor, because it will provide

her with a means to address the claims that have been asserted against her, including the claims of the Bank and the Internal Revenue Service. In the event that the Debtor is unable to propose a confirmable Chapter 11 plan, she is entitled to seek dismissal or re-conversion of the case pursuant to § 1112(b)(1) of the Bankruptcy Code.

For these reasons, the Court finds that conversion of the case will inure to the benefit of all parties in interest, and that the Debtor's case should be converted to a case under Chapter 11 pursuant to § 706(b) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. Florida Bank's Motion to Convert to Chapter 11 Pursuant to 11 U.S.C. § 706(b) is granted.

2. The Chapter 7 case of the Debtor, Laura J. Baker, is converted to a case under Chapter 11 pursuant to § 706(b) of the Bankruptcy Code.