**NOT FOR PUBLICATION**

FILED

JUN 07 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-15-1426-LKiTa |
| | ) | |
| MARLOW CURTIS LAFOUNTAINE, | ) | Bk. No. 6:14-bk-22000-SY |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MARLOW CURTIS LAFOUNTAINE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| HOWARD B. GROBSTEIN, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Argued and Submitted On May 19, 2016
at Pasadena, California

Filed - June 7, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott H. Yun, Bankruptcy Judge, Presiding

Appearances:     Krystina T. Tran of Law Offices of Tran &
Iserhien, PC argued for Appellant Marlow Curtis
LaFountaine; Michael R. Adele argued for Appellee
Howard B. Grobstein, Chapter 7 Trustee.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

1

Before: LANDIS,[1] KIRSCHER, and TAYLOR Bankruptcy Judges.

## INTRODUCTION[2]

This appeal arises from debtor/appellant Marlow Curtis LaFountaine's unsuccessful attempts to convert his chapter 7 bankruptcy case to a chapter 11 proceeding. The bankruptcy court denied the Debtor's conversion motion. We AFFIRM.

## STATEMENT OF FACTS

On September 25, 2014, Debtor/Appellant Marlow Curtis LaFountaine ("Debtor") filed a voluntary petition under chapter 13 of the Bankruptcy Code for the purpose of protecting his family home, located in Banning, California (the "Property").[3] Thirty-nine (39) days later, on November 3, 2014, Debtor consented to conversion of his case to chapter 7.

Ninety-one days after agreeing to convert from chapter 13 to chapter 7, Debtor cited changed circumstances and sought conversion once again, this time to chapter 11. After a hearing on Debtor's motion to convert to chapter 11, the bankruptcy court entered an order denying Debtor's motion. Denial was due to a

_____

[1] Hon. August B. Landis, Bankruptcy Judge for the District of Nevada, sitting by designation.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All Local Rule references are to the Local Rules of the United States Bankruptcy Court for the Central District of California.

[3] This case commenced with the filing of Debtor's second chapter 13 bankruptcy petition in the Central District of California. Debtor's first chapter 13 case was filed in 2011, and was dismissed on July 29, 2014, for failure to make plan payments. Neither Debtor nor the Trustee has provided the case number of Debtor's first chapter 13 bankruptcy.

lack of supporting evidence regarding Debtor's changed financial circumstances, in particular, the bankruptcy court noted that Debtor had not even filed an amended Schedule I or J to support his allegations.

Eight months later, Debtor filed another motion to convert his chapter 7 case to a chapter 11 proceeding (the "Motion"). The Motion again cited changed financial circumstances as the predicate for conversion to chapter 11. That same day, Debtor filed Amended Schedules I and J.

The Trustee filed a timely Opposition to Debtor's Motion, asserting that Debtor provided absolutely no evidence in support of the Motion. The Trustee specifically argued that neither the Motion nor Debtor's Amended Schedules provided any explanation of how Debtor would be able to cure the current deficiency on the loan payments regarding the Property or to make the monthly payments on the Property during the term of the proposed plan of reorganization.

The day before the hearing on the Motion, Debtor belatedly filed a Reply Brief to the Trustee's Opposition (the "Reply"). Attached to the Reply was Debtor's Declaration, a letter regarding Debtor's employment, a lease agreement regarding the Property, and an appraisal of the Property.[4]

At the commencement of the December 3, 2015 hearing on the Motion, the bankruptcy court noted that Debtor had filed his Reply late, that the court had therefore not read the Reply, and

---

[4] Counsel for the Trustee argued at the December 3 hearing on the Motion that the copy of the Reply served upon their office did not include all of the exhibits referenced in the Reply.

that the court was going to disregard the Reply and the attached declaration and exhibits in rendering its decision on the Motion.[5]

The bankruptcy court referenced Debtor's earlier motion to convert to chapter 11, which it denied for lack of evidence of changed circumstances.[6] During the course of the hearing, the court engaged Debtor's counsel in a dialog regarding Debtor's bankruptcy history, including his prior and unsuccessful chapter 13 bankruptcy case, Debtor's choice to convert his second chapter 13 case to chapter 7, Debtor's failure to support his previous motion to convert to chapter 11 with any evidence of changed circumstances, Debtor's delay in filing the pending and second Motion to convert to chapter 11, as well as the secured creditor's desire to move forward with a negotiated sale on the Property.

At the end of the hearing, the court <u>sua</u> <u>sponte</u> struck the Debtor's late-filed Reply. The court denied Debtor's motion to convert his case from chapter 7 to chapter 11; Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

---

[5] Pursuant to Local Rule 9013-1(g)(3): "Unless the court finds good cause, a reply document not filed or served [at least 7 days prior to the hearing] . . . will not be considered."

[6] During the earlier hearing, the court specifically looked for and noted the lack of an amended Schedule I and Schedule J to support Debtor's purported changed financial circumstances.

4

**ISSUE**

Did the bankruptcy court commit reversible error when it denied the Debtor's Motion to convert this case from chapter 7 to chapter 11?

**STANDARDS OF REVIEW**

We review a bankruptcy court's order denying conversion to chapter 11 under Section 706(b) for abuse of discretion. In re Parvin, 2016 W.L. 1584068, *1 (W.D. Wash. 2016). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)); Willis v. Rice (In re Willis), 345 B.R. 647, 654 (8th Cir. BAP 2006) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong.2d Sess. at 94 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787).

**DISCUSSION**

Debtor raises a single argument in assigning error to the bankruptcy court's denial of his Motion. Specifically, Debtor argues that the Motion should have been granted because he was acting in good faith when it was filed. That argument lacks merit. The bankruptcy court should be affirmed.

**A. Conversion pursuant to Section 706(b) is within the discretion of the bankruptcy court, based upon what will inure to the benefit of all interested parties, including the Debtor.**

A motion to convert a chapter 7 case to a case under chapter 11 is governed by Section 706 of the Code. Under Section 706(a), a debtor may voluntarily convert a chapter 7 case to one under chapter 11 if the case has not previously been converted under Section 1307. Debtor originally filed this case under chapter 13 and then consented to having his case converted to chapter 7. Since Debtor could not convert his case to chapter 11 under Section 706(a), Debtor necessarily looked to Section 706(b) in seeking conversion to chapter 11.

Section 706(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." Under Section 706(b) then, any party in interest, including a debtor, may request conversion of the case to chapter 11 at any time.

"The decision whether to convert [a case under Section 706(b)] is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." H.R.Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong.2d Sess. at 94 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787. In the course of the hearing on the Motion, the bankruptcy court determined that conversion of the Debtor's case to chapter 11 would not benefit all parties in interest.

6

Section 706(b) does not provide guidance regarding the factors a court should consider in resolving a conversion motion. Schlehuber v. Fremont Nat'l Bank & Trust Co. (In re Schlehuber), 489 B.R. 570, 573 (8th Cir. BAP 2013), aff'd, 558 Fed. App'x 715 (8th Cir. 2014) (footnote omitted). "Since there are no specific grounds for conversion, a court 'should consider anything relevant that would further the goals of the Bankruptcy Code.'" Proudfoot Consulting Co. v. Gordon (In re Gordon), 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012) (quoting In re Lobera, 454 B.R. 824, 854 (Bankr. D. N.M. 2011)).

While Section 706(b) does not mandate a balancing of parties' interests as a predicate to conversion of a chapter 7 case to chapter 11, courts consistently consider several factors, including a debtor's ability to fund a chapter 11 plan, in exercising their discretion under Section 706(b). See In re Parvin, 538 B.R. 96, 102 (Bankr. W.D. Wash. 2015), aff'd, --- B.R. ---, 2016 W.L. 1584068 (W.D. Wash. March 22, 2016); In re Decker, 535 B.R. at 838 (citing In re Baker, 503 B.R. 751, 755 (Bankr. M.D. Fla. 2013)); In re Gordon, 465 B.R. at 692; In re Graham, 21 B.R. 235, 238 (Bankr. N.D. Iowa 1982).

> A debtor's ability to pay typically is a starting point in the [§ 706(b)] analysis, however, since the whole reason for asking [for] a case to be converted is the assumption that creditors would receive more in a chapter 11 than in a chapter 7.

In re Parvin, 538 B.R. at 102 (quoting In re Peterson, 524 B.R. at 815); see also In re Karlinger-Smith, 544 B.R. 126, 134 (Bankr. W.D. Tex. 2016) (quoting In re Decker, 535 B.R. 828, 839 (Bankr. D. Alaska 2015) ("[T]he U.S. Trustee's focus on the Debtors' ability to pay makes sense as 'an exceedingly relevant,

7

if not necessary, factor and the obvious starting point for any analysis under section 706(b).'")); In re Gordon, 465 B.R. at 692-93 ("The cases considering conversion to Chapter 11 begin the analysis with the acknowledgment that the debtor can pay more in a Chapter 11 case than in a Chapter 7 case, which is a benefit to creditors."); In re Schlehuber, 489 B.R. at 574 ("The Debtor's ability to fund a Chapter 11 plan if he chooses to do so was certainly an important and relevant consideration.").

**B. Debtor failed to carry his burden of proving that conversion would inure to the benefit of all parties.**

The burden is on the moving party to establish that the case should be converted under Section 706(b). In re Parvin, 538 B.R. at 101. Debtor made no such showing in support of the Motion.

Debtor based his Motion to convert from chapter 7 to chapter 11 upon an assertion that his financial circumstances had changed. Debtor did file amendments to Schedule I, Debtor's Income, and Schedule J, Debtor's Expenses. These amended schedules were presumably filed to document changes in his financial circumstances. In addition to his amendments to Schedules I and J, Debtor belatedly filed a Reply with an attached Declaration, an employment letter, lease agreement on the Property, and an appraisal of the Property as additional evidence of his changed financial circumstances. Because the Reply and related attachments were not timely filed, they were disregarded by the bankruptcy court in its consideration of Debtor's claim of changed circumstances in accordance with Local Rule 9013-1(g)(3). Ultimately, the Reply and attachments were stricken from the record by the bankruptcy court.

8

Although the bankruptcy court chose to disregard the Reply, together with its attachments and exhibits, Debtor's Amended Schedules I and J were filed well before the hearing and are part of the bankruptcy court's docket. They were not stricken and could, depending upon their contents, independently support Debtor's claim of changed financial circumstances.

On close examination, however, Debtor's Amended Schedules I and J undermine Debtor's claim that he can successfully reorganize in a chapter 11.[7] Amended Schedule I reflects monthly rental income of $3,605.92 on line 8a. When combined with $5,000 Independent Contractor Income reflected on line 8h, Debtor's Amended Schedule I reflects monthly income of $8,605.92.

Debtor's Amended Schedule J shows monthly expenses of $6,017.00, yielding monthly net income of only $2,588.92. Debtor's Amended Schedule I fails to address how Debtor would cure the existing arrearage of over $318,000 on the mortgage encumbering the Property if his case were converted to chapter 11. Even if Debtor applied the entirety of his monthly net income to paying the arrearage, simultaneously paying no other creditors, it would take Debtor roughly eleven years to cure the arrearage. Further clouding the arrearage repayment issue, the current lease on the Property is for only three years, not eleven, leaving a significant plan funding gap. Ultimately, Amended Schedules I and J provide little independent support for

---

[7] Debtor failed to include his original Schedules I and J in the appellate record, so there is no baseline for comparison to determine whether and to what extent Debtor's financial circumstances had changed.

9

Debtor's claim of changed financial circumstances, and they undercut his claim that he is able to reorganize under chapter 11.

More importantly, Debtor's purported actions in renting out the Property after the case was converted to chapter 7 create a potentially significant problem for both the estate and the Chapter 7 Trustee. As the bankruptcy court noted, Debtor is not the real party in interest in his chapter 7 bankruptcy[8] and had no legal authority or right to lease estate property postpetition. Accordingly, the purported lease of the Property cannot support Debtor's claim of changed financial circumstances.

## C. The bankruptcy court properly applied a multi-factor test in evaluating Debtor's Motion.

Debtor firmly believes that:

[t]here is a realistic possibility of an effective reorganization, because Debtor has sufficient income and resources to obtain confirmation of a plan.

---

[8] When Debtor declared bankruptcy, all the "legal or equitable interests" he had in the Property became the property of the bankruptcy estate. See 11 U.S.C. § 541(a); Suncrest Healthcare Center LLC v. Omedga Healthcare Investors (In re Raintree Healthcare Corp.), 431 F.3d 685, 688 (9th Cir. 2005). When Debtor's case converted to chapter 7, Debtor relinquished possession of the estate to the trustee for liquidation and distribution to his creditors. See 11 U.S.C. § 704. To effectuate this purpose, the trustee's management of the estate — including renting or selling outright the Debtor's real property — must necessarily be free from interference by the Debtor. Thus, the chapter 7 trustee, not the Debtor, became the real party in interest with authority to control the Debtor's estate property upon conversion of the case. Therefore, Debtor had no standing or authority to rent the property to anyone. Accordingly, the lease signed by Debtor is voidable, since he had no right or authority to affect the future use of the Property following conversion.

10

Consistent with this premise, Debtor's counsel argued before the bankruptcy court that Debtor could provide proof that, upon conversion to chapter 11, he could propose and confirm a 100% plan. The evidentiary record before the bankruptcy court at the conversion hearing failed to support that contention.

On appeal, Debtor also argues that:

> [t]he issue of **good faith was the deciding factor** that the bankruptcy judge **considered most** in making his decision on the Motion to Convert filed on October 22, 2015.

(Emphasis added). Debtor is incorrect.

A careful search of the hearing transcript establishes that the bankruptcy court never used the phrase "good faith" nor the phrase "bad faith" during the course of the hearing on Debtor's Motion. The bankruptcy court did, however, engage in a fairly substantial discussion with Debtor's counsel regarding Debtor's history in bankruptcy, including Debtor's prior unsuccessful chapter 13 bankruptcy case, Debtor's failure to support his first motion to convert to chapter 11 with any evidence, Debtor's delay in filing the second Motion to convert, and the secured creditor's desire to move forward with a negotiated sale on the Property.[9]

The record evidences that the bankruptcy court based its decision upon consideration of three factors, none of which involved a determination of bad faith. These factors were:

---

[9] The Trustee negotiated with the secured creditor to obtain a carve-out that would pay both the Trustee's professionals as well as general unsecured creditors from a sale of the Property, even though the creditor will receive far less than the full amount of its debt.

11

whether the debtor can propose and confirm a plan; the primary purpose of converting the case to a different chapter; and whether the conversion benefits all parties in the case.[10]

The bankruptcy court specifically found that Debtor was not likely to be able to propose and confirm a chapter 11 plan. Debtor failed to present any evidence, other than Amended Schedules I and J, to establish that his financial circumstances had changed. As noted previously, those Amended Schedules do not substantiate Debtor's changed circumstances claim, and, absent evidence of changed circumstances, Debtor was not capable of confirming a chapter 11 plan.

The bankruptcy court also found that while Debtor's stated purpose for converting to a chapter 11 was to save his house, a chapter 11 plan simply was not feasible. The bankruptcy court noted that:

> I just don't believe this debtor has shown the ability to propose and confirm a plan. I'm very skeptical that the debtor will be able to keep this house, even if I allow the debtor to propose a plan in Chapter 11. I mean, this is a big loan. Whether the property is worth one point -- a million dollars or 1.3, I think the amount owed is 1.3 million. That's a big loan for a home in the Inland Empire in Riverside Division. Maybe the debtor really likes the home but, you know what, sometimes house is just a thing. Don't let the things that you own, own you. At this point, Mr. LaFountaine doesn't own this home; that home owns him.
> He clearly cannot afford this house. If he hasn't paid a mortgage payment in two years, come on. How is

---

[10] Consistent with the bankruptcy court's ruling, courts have held that "[a]mong the factors considered are whether the debtor can propose a confirmable plan, whether the primary purpose of the chapter 11 is to liquidate or reorganize, and whether conversion benefits all parties in the case." In re Peterson, 524 B.R. 808, 815 (Bankr. S.D. Ind. 2015) (citing In re Gordon, 465 B.R. at 691-92); In re Parvin, 538 B.R. at 101.

he going to -- to try to propose and confirm this Chapter 11 plan? And it's very clear U.S. Bank would rather get paid less with the Trustee now through a short sale than count on the debtor over time to cure that arrearage.

Finally, the bankruptcy court found that Debtor failed to present evidence establishing that an effort to keep his house and reorganize his debts would inure to the benefit of any parties in interest other than the Debtor and his family. The bankruptcy court found that secured creditor U.S. Bank, in particular, and the Debtor's unsecured creditors, in general, had been waiting four years to be paid by the Debtor and should not have to wait an additional five years to get their money, assuming that Debtor made his plan payments.

Put simply, Debtor failed to establish that he had the ability to propose and confirm a chapter 11 plan that would inure to the benefit of all parties in interest. Thus, Debtor failed to carry his burden of proving that his case should be converted to chapter 11 under Section 706(b). The bankruptcy court did not abuse its discretion, or otherwise commit reversible error, in denying Debtor's Motion.

**CONCLUSION**

For all of the reasons set forth above, the bankruptcy court's order denying Debtor's Motion to convert this case to chapter 11 under Section 706(b) is AFFIRMED.

13