

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ANSELMO CABRAL and ALMA CABRAL,<br>          Debtors. | BAP No. CC-20-1061-LST<br><br>Bk. No. 2:15-bk-19370-SK |
| ANSELMO CABRAL; ALMA CABRAL,<br>          Appellants,<br>v.<br>JASON RUND, Chapter 7 Trustee;<br>UNITED STATES TRUSTEE,<br>          Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Anselmo and Alma Cabral appeal the bankruptcy court's order

denying their motion to dismiss their chapter 7[1] case. After Debtors had

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1]Unless specified otherwise, all chapter and section references are to the
(continued...)

performed under their confirmed chapter 13 plan for over four years, they found themselves unable to make plan payments and, on the advice of counsel, converted their case to chapter 7. After the chapter 7 trustee began taking steps to sell their residence, Debtors moved to dismiss their case for cause under § 707(a). The bankruptcy court denied the motion.

We AFFIRM.

## FACTUAL BACKGROUND[2]

Debtors filed a chapter 13 petition on June 11, 2015. About five months later, the bankruptcy court confirmed their 60-month plan. Approximately four and a half years into their plan, Debtors found themselves unable to afford their plan payments due to Mr. Cabral's loss of work. On the advice of their attorney, they sought and obtained an order converting the case to chapter 7. Appellee Jason Rund ("Trustee") was appointed chapter 7 trustee. At the time of conversion, the remaining allowed unsecured claims totaled $30,458.91.

After conversion, Trustee filed an application to retain counsel to assist with administering the estate, which the bankruptcy court granted.

---

[1](...continued)
Bankruptcy Code, 11 U.S.C. §§ 101-1532, and"Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2]Where necessary, we have exercised our discretion to examine the bankruptcy court's docket and available imaged papers in the bankruptcy case. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

In the application, Trustee stated his belief that Debtors' Los Angeles residence had about $128,587 of non-exempt equity available to pay creditors.

Debtors then moved to dismiss their chapter 7 case. Debtors acknowledged that the equity in their residence had increased significantly but explained that their attorney had not taken that fact into account when he advised them to convert. They also acknowledged that Trustee's counsel had advised Debtors' attorney that Trustee would be willing to allow them to refinance their residence to pay unsecured creditors but stated that they did not want to do so.

Debtors stated in their accompanying declaration that they would not have agreed to conversion had they known their home's equity would be put at risk. They proposed to dismiss the chapter 7 case and file a new chapter 13 case that would pay 100 percent to unsecured creditors over five years, with the monthly estimated plan payment of $563.49 to be funded with Alma Cabral's and daughter Amanda Cabral's employment income. Debtors also stated that Mr. Cabral had a workers compensation claim that would potentially pay out a "significant" amount. Additionally, Debtors filed a declaration from Amanda Cabral stating that she lives with her parents and confirming that she was willing and able to contribute $3,400 per month toward total household expenses to enable Debtors to afford the plan payments. Debtors provided copies of Alma and Amanda's paystubs

for December 2019 and January 2020.

The United States Trustee ("UST") filed an opposition, arguing that Debtors had not met their burden of proving that dismissal would not prejudice creditors. Trustee filed a joinder to UST's opposition, arguing that there was no cause for dismissal and that permitting the course of action proposed by Debtors would be unfair and prejudicial because their proposal would, in effect, allow Debtors a ten-year plan that would require creditors to wait another five years to be paid. Trustee also pointed out that a second plan would potentially be confusing to creditors because those creditors that had allowed claims in the first case would need to file proofs of claim in the second case.

At the hearing on the motion, the bankruptcy court denied the motion, finding that bad legal advice did not constitute cause for dismissal, and there was no guarantee Debtors would refile or could repay creditors were the case to be dismissed.

Debtors timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.[3]

---

[3]Ordinarily, an order denying a motion to dismiss a bankruptcy case is interlocutory. *Jue v. Liu (In re Liu)*, 611 B.R. 864, 873 (9th Cir. BAP 2020). But we have discretion to treat Debtors' notice of appeal as a motion for leave to appeal. Rule

(continued...)

## ISSUE

Whether the bankruptcy court abused its discretion in denying Debtors' motion to dismiss their chapter 7 case for cause under § 707(a).

## STANDARD OF REVIEW

We review the denial of a debtor's motion to dismiss a chapter 7 case for abuse of discretion. *Hickman v. Hanna (In re Hickman)*, 384 B.R. 832, 836 (9th Cir. BAP 2008); *Bartee v. Ainsworth (In re Bartee)*, 317 B.R. 362, 365 (9th Cir. BAP 2004).

Under the abuse of discretion standard, we must affirm unless the bankruptcy court applied the wrong legal standard or its findings were "illogical, implausible or without support in the record." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

Section 707(a) permits a bankruptcy court to dismiss a chapter 7 case "only for cause." *In re Bartee*, 317 B.R. at 366. "Cause" is not defined in the statute, but it includes enumerated examples that are not relevant here. If none of those examples apply, and there is no specific Code provision that addresses the asserted cause, the court is to determine whether the totality of circumstances amount to "cause" under § 707(a). *In re Hickman*, 384 B.R.

---

[3](...continued)
8004(d). We do so here, and we grant leave.

5

at 840. As part of establishing cause, a debtor seeking dismissal of a chapter 7 case has the burden to demonstrate that creditors will not be prejudiced by dismissal. *See In re Bartee*, 317 B.R. at 365-66. This consideration is crucial, and where prejudice exists, the debtor's reasons for requesting dismissal are nearly always irrelevant. *See id.* at 366 ("In the Ninth Circuit, 'a voluntary Chapter 7 debtor is entitled to dismissal of his case so long as such dismissal will cause no "legal prejudice" to interested parties.'" (quoting *Leach v. United States (In re Leach)*, 130 B.R. 855, 857 (9th Cir. BAP 1991))); *see also Gill v. Hall (In re Hall)*, 15 B.R. 913, 917 (9th Cir. BAP 1981) ("[U]nless dismissal will cause some plain legal prejudice to the creditors, it normally will be proper." (quoting *Schroeder v. Int'l Airport Inn P'ship (In re Int'l Airport Inn P'ship)*, 517 F.2d 510, 512 (9th Cir. 1975)).

In its ruling, the bankruptcy court relied heavily on *Bartee*. In that case, debtors sought dismissal of their chapter 7 case four days after their trustee filed a report indicating that the estate had assets to distribute to creditors. *In re Bartee*, 317 B.R. at 364. The Bartees asserted that their bankruptcy filing was the result of bad legal advice. They also advised the court that they had sufficient assets to pay their creditors in full, and expressed their intent to do so upon dismissal of their case. *Id.* The Bartees never supported their dismissal motion with any admissible evidence. *Id.* at 364-65.

Opposing the motion, the trustee pointed out that the Bartees had

6

been less than candid about their financial affairs and had not cooperated with his request for additional financial information. As a result, the trustee maintained that the Bartees could not be trusted to honor their promises to repay their creditors outside of bankruptcy. *Id.* at 365.

After a hearing, the bankruptcy court denied the dismissal motion, explaining that the Bartees' intentions were too speculative and their creditors' interests were best served by the continuation of the bankruptcy case. *Id.* at 365. On appeal, we affirmed. We pointed to the lack of evidence supporting the Bartees' motion. *Id.* at 366. We also expressed our agreement with the bankruptcy court's determination that the Bartees had not demonstrated an absence of prejudice to their creditors. As we explained: "This is an asset case. The trustee anticipates that there will be funds available to pay unsecured creditors. Dismissal of debtors' case would have prejudiced their creditors, because there is no guarantee that debtors will pay their debts outside of bankruptcy." *Id.* (citation omitted).

The bankruptcy court found the instant case similar to *Bartee* because the debtors in that case argued that they had received bad legal advice and pledged to repay creditors after dismissal, arguments that were rejected as inadequate by this Panel. The court thus denied the motion based on the reasoning of *Bartee*, finding that dismissal would be prejudicial to

creditors.[4]

On appeal, Debtors concede that bad legal advice does not constitute cause for dismissal. They instead contend that they raised the issue only to explain that they would not have agreed to conversion had they known Trustee would target the equity in their home. They assert that counsel's failure to warn them of the potential consequences of conversion "was meant to serve as an equitable consideration to determine whether there is cause for dismissal."

With respect to the question of prejudice to creditors, Debtors contend that the bankruptcy court erred in finding that their proposal was too speculative to ensure that creditors would not be prejudiced by dismissal. They distinguish *Bartee*, pointing out that the debtors in that case had been uncooperative and less than candid about their financial affairs, and their repayment proposal was not supported by any documentary evidence or affidavits. In contrast, they argue, they were truthful in their schedules, performed under a chapter 13 plan for four and a half years, and provided declarations and documentation to support their proposal to pay creditors after dismissal. They also argue that, unlike the situation where a trustee seeks to administer a liquid asset, there is little risk the equity in the residence would be lost, i.e., "there is no indication Appellants would sell

---

[4]While the bankruptcy court did not explicitly state that dismissal would prejudice creditors, that conclusion is implicit in the court's analysis.

their residence and abscond with the equity if the Chapter 7 case is dismissed."

Debtors are correct that the facts of this case differ from those presented in *Bartee*. There is no evidence of bad faith, and Debtors provided evidence to support their proposed course of action. But their focus on that aspect of the case, and their assertion that their good faith should weigh in their favor in an equitable balancing of rights between debtors seeking to dismiss their chapter 7 cases and creditors whose payment would be rendered less certain thereby, demonstrates that Debtors misunderstand the applicable standard.

As an initial matter, there is no question that creditors in this case would suffer prejudice were Debtors permitted to dismiss it, even if Debtors follow through and file another chapter 13 case. Such an outcome would increase the creditors' risk of nonpayment: creditors presently have the opportunity for reasonably prompt and highly certain payment in this case through the Trustee's liquidation of assets of a value sufficient to pay all claims. Forcing creditors to trade that outcome for one in which they would rely on the Debtors to file a new chapter 13 case, propose and confirm a plan, and perform under that plan for five years would be prejudicial; it would delay payment and increase the potential harm to creditors from non-payment.

Debtors seek to imply that their presumed good faith, as exemplified

by their performance under a longstanding chapter 13 case that was unsuccessful through no fault of theirs, and relying on the advice of counsel in converting their case to one under chapter 7, acts as a mitigating factor against the uncertainty of payment that their case dismissal would create. This assertion is unmerited for at least two reasons.

First, while we have held that the bankruptcy court "may evaluate a voluntary motion to dismiss using both legal and equitable considerations[,]" *In re Leach*, 130 B.R. at 856, equitable considerations do not come into play when a debtor is unable to show that creditors would not be prejudiced by dismissal. *See id.* at 857 (holding that equitable considerations are relevant only in the absence of dispositive legal arguments, i.e., plain legal prejudice to creditors).

In *Leach*, the debtor sought to dismiss his chapter 7 case because he filed his case too early to discharge certain federal income taxes. 130 B.R. at 856. The bankruptcy court denied the motion because it found that the United States would be prejudiced by the dismissal. *Id.* at 857. On appeal, the debtor argued that the bankruptcy court erred in not taking into account certain equitable factors: (1) his early filing was based on bad advice from his former attorney; (2) he did not act fraudulently or in bad faith but was completely forthright; (3) he had no assets; (4) he was a recovering alcoholic; and (5) denial of his motion to dismiss was a denial of the fresh start guaranteed in bankruptcy. *Id.* We rejected that argument,

noting that the bankruptcy court had taken those facts into account, and that it had correctly concluded that the equitable considerations were irrelevant in light of the legal prejudice to the United States that would result if the case were dismissed. *Id.* at 858.

Rather than focusing on equitable factors, the cases indicate almost universally that courts should approve voluntary case dismissals only where the payment of creditors is provided for, and reasonably prompt and certain. *See id.; In re Bartee*, 317 B.R. at 366 (holding that because the trustee anticipated that there would be funds available to pay unsecured creditors, dismissal would prejudice creditors because there was no guarantee that debtors would pay their debts outside of bankruptcy); *In re Hall*, 15 B.R. at 917 (reversing order granting debtor's motion to dismiss because he had filed his homestead exemption too late, holding that dismissal would result in plain legal prejudice to creditors because "[i]n the present case the objections to exemptions filed by the trustee, if sustained, would provide a payment to unsecured creditors. If the debtor were to dismiss, file a homestead and then file a new bankruptcy there would be no distribution to unsecured creditors.")

Second, although bad faith conduct by Debtors would certainly prejudice creditors' ability to be paid, the good faith of Debtors, by itself, does not remove or even necessarily lessen the prejudice to creditors, as the bankruptcy court implicitly found here. Not only would it be prejudicial

for creditors to wait an additional five years to be paid in a new chapter 13 case, but, as was discussed candidly at oral argument, other factors are now present. The California legislature recently amended California Code of Civil Procedure § 704.730, effective January 1, 2021, to expand the amounts available for homestead exemptions.[5] Were Debtors to wait until on or after January 1, 2021 to file a new case, as we assume they would, given that it would be very much in their interest to do so, they would be entitled to take advantage of this increased exemption. And taking advantage of this exemption would almost certainly ensure that unsecured creditors in the subsequent case would receive little or no distribution on account of their claims.

Finally, the bankruptcy court correctly articulated the standard that prejudice exists where assets that would have been available for distribution to creditors are lost as a result of the dismissal. *Simon v. Amir (In re Amir)*, 436 B.R. 1, 16 (6th Cir. BAP 2010). Debtors misconstrue this standard in arguing that they are unlikely to abscond with the equity in their home post-dismissal. The "loss" of an asset, as contemplated by the case law, refers to the fact that dismissal removes estate assets from the control of the bankruptcy court, not the post-dismissal dissipation of an asset. In addition, Debtors would not be bound to file a new chapter 13

---

[5]The revised statute sets the minimum homestead exemption at $300,000 and the maximum at $600,000, depending on the countywide median sale price for a single family home in the previous calendar year.

case. This alone renders dismissal prejudicial to creditors. *See In re Komyathy*, 142 B.R. 755, 757 (Bankr. E.D. Va. 1992) ("[I]f dismissal were to be granted, the parties would no longer be under the jurisdiction of this court nor the Bankruptcy Code. The trustee would be relieved of his obligation to ensure payment to the creditors, and conversely, the creditors would lose the guarantee of repayment. In the absence of affirmative consent of the creditors, this lost guarantee constitutes plain legal prejudice.").

## CONCLUSION

For these reasons, the bankruptcy court did not abuse its discretion in denying Debtors' motion to dismiss their chapter 7 case. Accordingly, we AFFIRM.

13